**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ADRIAN BURRELL,
*Plaintiff-Appellant*,

v.

CAROLYN W. COLVIN,
Commissioner of Social Security,
*Defendant-Appellee.*

No. 12-16673

D.C. No.
2:11-cv-00749-
SRB

OPINION

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Argued June 11, 2014
Resubmitted December 19, 2014
San Francisco, California

Filed December 31, 2014

Before: Mary M. Schroeder, Susan P. Graber, and Jay S.
Bybee, Circuit Judges.

Opinion by Judge Graber;
Dissent by Judge Schroeder

**SUMMARY**[*]

### Social Security

The panel reversed the district court's decision affirming the Social Security Commissioner's denial of Adrian Burrell's application for disability insurance benefits pursuant to the Social Security Act, and remanded the case for further proceedings.

The panel held that there was not substantial evidence to support the administrative law judge's ("ALJ") rejection of Burrell's testimony, or the ALJ's rejection of the medical assessment by Burrell's treating physician. The panel also held that because it had "serious doubt" as to whether Burrell was, in fact, disabled pursuant to *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014), the district court shall remand the case to the ALJ for further proceedings, and the ALJ shall not be required to credit-as-true any evidence.

Judge Schroeder dissented. Judge Schroeder agreed with the majority that substantial evidence supported neither the ALJ's discrediting of Burrell's testimony nor his rejection of the treating physician's medical assessment, but she would remand for an award of benefits. Judge Schroeder would hold that the three prerequisites of *Garrison* are met, would credit-as-true the discredited evidence, and would not find that there were serious doubts as to whether Burrell was disabled within the meaning of the Act.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Eric G. Slepian (argued), Slepian Law Office, Phoenix, Arizona, for Plaintiff-Appellant.

Sarah Van Arsdale Berry (argued), Special Assistant United States Attorney, Social Security Administration, General Counsel's Office, Denver, Colorado; Michael A. Johns, Assistant United States Attorney, Phoenix, Arizona, for Defendant-Appellee.

## OPINION

GRABER, Circuit Judge:

Claimant Adrian Burrell applied for social security disability benefits primarily because of debilitating headaches resulting from neck and back conditions. An administrative law judge ("ALJ") found her not disabled, the Appeals Council denied review, and the district court affirmed the denial of benefits. We conclude that substantial evidence supports neither the ALJ's rejection of Claimant's testimony nor his rejection of the medical assessment by Claimant's treating physician, Dr. William Riley. Accordingly, we reverse the district court's decision. But, because we have "serious doubt" as to whether Claimant is, in fact, disabled, *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014), the district court shall remand the case to the ALJ for further proceedings on an open record; that is, on remand, we do not require the ALJ to credit as true Claimant's testimony, Dr. Riley's assessment, or any other evidence.

## FACTUAL AND PROCEDURAL HISTORY

Claimant filed an application for benefits, alleging a disability onset date of December 18, 2007. For years, Claimant has suffered pain and headaches resulting from various neck and back conditions, including a tumor near the cervical spine, disc herniation, degenerative disc conditions, and a broad-based disc bulge. Medical providers tracked degenerative disc changes from the early 1990s through 2009, when she underwent back surgery following a seizure. Claimant long had suffered from mild tingling in her left hand. After surgery, she experienced great difficulty gripping and grasping items with her left hand.

At the hearing before the ALJ, Claimant testified that she experiences an average of one to two debilitating migraine headaches per week. When they occur, the headaches require her to lie down in a dark room for the remainder of the day. Claimant testified that, because of neck and back pain, she is able to stand, walk, and sit for limited durations only. She experiences pain when lifting heavy objects and has trouble sleeping.

The ALJ issued a written decision concluding that Claimant is not disabled for purposes of the Social Security Act. The ALJ concluded that Claimant has "severe" impairments of "chronic neck and low back pain . . . ; impaired grip in the left hand; and chronic headaches." But she has the residual functional capacity to perform "medium exertion" with additional limitations that she avoid exposure to workplace hazards and not operate an automobile. In reaching that conclusion, the ALJ found Claimant's testimony not credible to the extent that it conflicted with the residual functional capacity, and he rejected the contrary conclusions

of Claimant's primary care doctor, Dr. Riley. Finally, the ALJ concluded that Claimant was not disabled because she can perform her past relevant work as a receptionist and a manicurist.

Claimant sought review by the Appeals Council. As part of that review, she submitted additional medical evidence. The Appeals Council denied review. Claimant filed this action, and the district court affirmed the denial of benefits in a written order. Claimant timely appeals.

## STANDARDS OF REVIEW

We review de novo the district court's order affirming a denial of social security benefits. *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

When, as here, "the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court [and this court] must consider when reviewing the Commissioner[ of Social Security]'s final decision for substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).

Where, as here, Claimant has presented evidence of an underlying impairment and the government does not argue that there is evidence of malingering,[1] we review the ALJ's

---

[1] As discussed below, in Part A-3, one report in the record suggests that Claimant may have been motivated by *secondary gain*, that is, an incidental benefit of an illness. But the government has not argued that this isolated report equals evidence of *malingering* for purposes of our standard of review.

rejection of her testimony for "specific, clear and convincing reasons." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). The government disputes that standard of review. Relying primarily on *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991) (en banc), the government argues that we review the ALJ's decision only for *specific* reasons and that "clear and convincing" reasons are not required. We disagree.

In *Bunnell*, we resolved a longstanding conflict in the cases about whether a claimant must produce objective medical evidence to demonstrate the extent of his or her pain. *Id.* at 342. As part of our analysis, we concluded that the ALJ's reasons for rejecting a claimant's testimony must be "specific." *Id.* at 345. It is true that the *Bunnell* court did not mention "clear and convincing reasons." But that standard predated the decision in *Bunnell*, *e.g.*, *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984), and there is no indication that *Bunnell* intended to overrule that precedent. Indeed, the cases following *Bunnell* read it as *supplementing* the "clear and convincing" standard with the requirement that the reasons *also* must be "specific." *E.g.*, *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995). Our more recent cases have combined the two standards into the now-familiar phrase that an ALJ must provide specific, clear, and convincing reasons. *Molina*, 674 F.3d at 1112. There is no conflict in the caselaw, and we reject the government's argument that *Bunnell* excised the "clear and convincing" requirement. We therefore review the ALJ's discrediting of Claimant's testimony for specific, clear, and convincing reasons.

Finally, because other doctors' opinions contradicted the opinion of Dr. Riley, we review the ALJ's rejection of Dr.

Riley's opinion for "specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

## DISCUSSION

Claimant challenges the ALJ's adverse credibility determination and his rejection of Dr. Riley's reports.[2] The parties also dispute the appropriate remedy, in the event that we conclude that the ALJ erred.

A. *Claimant's Credibility*

After stating the residual functional capacity, the ALJ wrote:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

---

[2] Claimant also argues that the ALJ committed legal error by failing to adhere to Social Security Ruling 96-8p when setting forth her residual functional capacity. Claimant waived that argument by failing to raise it before the district court. *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1063 n.3 (9th Cir. 2007). In any event, we have considered the argument and found it unpersuasive.

The ALJ's decision then drifts into a discussion of the medical evidence; it provides no *reasons* for the credibility determination. Sifting through the ALJ's decision, the government finds three reasons for the adverse credibility determination, albeit dispersed in seemingly random places in the decision. We address those reasons in turn.

### 1. *Daily Activities Inconsistent with Testimony*

The ALJ noted, three single-spaced pages after the adverse credibility determination, in the midst of an analysis of medical sources, that "the claimant's self-reports to the physical therapist do not indicate the degree of limitation suggested by the medical source statement, and indeed is inconsistent with the claimant's testimony at [the] hearing." Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

But the ALJ did not elaborate on *which* daily activities conflicted with *which* part of Claimant's testimony. The only mention found in the ALJ's decision is five pages earlier, when summarizing Claimant's testimony: "Although she testified she was unable to use a vacuum, she reported to the physical therapist that she did use the vacuum and was able to perform most housekeeping activities."[3] As to vacuuming, Claimant stated at the hearing in December 2009:

---

[3] The latter part of this finding—concerning most household chores—is plainly consistent with Claimant's testimony. She testified at the hearing, consistent with her reports to the physical therapist, that she can perform most household chores.

> Vacuuming and I don't get along well at this point. It hurts to do the stretching and pulling. I occasionally sweep with a broom and dustpan, wipe down the kitchen counters, sometimes load the dishwasher. It takes longer because I have to use my right hand to do it.

The ALJ cited six worksheets that asked Claimant whether her impairments affected her ability to do chores such as, specifically, vacuuming. In those worksheets, which span the period March 2009 to June 2009, Claimant checked the box "Yes, Limited a little" five times, and she once checked the box for "Yes, Limited a lot." Also in June 2009, the physical therapist reported, without elaboration, that Claimant "can push the vacuum."

Substantial evidence does not support the ALJ's determination that there is a conflict concerning Claimant's ability to vacuum. Claimant consistently reported to the physical therapist that she had trouble vacuuming, which is entirely consistent with her testimony at the hearing that stretching and pulling, which are required to vacuum, cause her pain. Claimant did not testify that she *never* could vacuum; she stated that vacuuming was difficult for her "*at this point*." (Emphasis added.)

Perhaps recognizing the flaw in the ALJ's reasoning about vacuuming, the government declines to mention vacuuming. Instead, the government identifies *other* alleged inconsistencies between Claimant's hearing testimony and her reported daily activities, such as knitting and lace work. But the ALJ did not identify those inconsistencies. "We are constrained to review the reasons the ALJ asserts." *Connett*

*v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Our decisions make clear that we may not take a general finding—an unspecified conflict between Claimant's testimony about daily activities and her reports to doctors—and comb the administrative record to find specific conflicts. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "To support a lack of credibility finding, the ALJ was required to point to *specific facts* in the record . . . ." *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009) (emphasis added) (internal quotation marks omitted). Here, the ALJ stated only—in passing and in a different section than the credibility determination—that Claimant's self-reports were inconsistent in some unspecified way with her testimony at the hearing. That finding is insufficient to meet "our requirements of specificity." *Connett*, 340 F.3d at 873.

## 2. *Conflict with Medical Record*

The government argues that Claimant's testimony that she has, on average, one or two headaches a week conflicts with the medical record. As an initial matter, the ALJ never connected the medical record to Claimant's testimony about her headaches. Although the ALJ made findings—discussed below—concerning Claimant's treatment for headaches, he never stated that he rested his adverse credibility determination on those findings. For that reason alone, we reject the government's argument that the history of treatment for headaches is a specific, clear, and convincing reason to support the credibility finding.

Moreover, the ALJ's findings concerning Claimant's treatment history are plainly erroneous. The ALJ stated that,

"[d]uring the period under review, there is a gap in treatment from September 7, 2007, when the claimant was seen to obtain a work excuse for family medical leave, until September 2, 2008." As the government concedes, that statement is contrary to the record. Claimant was treated on November 1, 2007, November 8, 2007, November 29, 2007, and May 19, 2008. The ALJ apparently overlooked significant medical records when assessing whether the medical record conflicted with Claimant's testimony.

The ALJ also stated that "[t]here is no record of primary care for headaches, neck, or back pain subsequent to October 2008 other than the medical source statement dated November 9, 2009 and a MRI report dated October 14, 2009." Yet four different medical records from that period contain reports of headaches or neck pain.[4] *See* Report dated April 21, 2009 (although Claimant's neck pain was much improved, her migraine headaches continued and were no better than before her surgery); Report dated May 5, 2009 (ongoing headaches without improvement); Report dated August 2, 2009 (head pain); Report dated September 23, 2009 ("neck pain no change").

In sum, the ALJ did not make a specific finding linking a lack of medical records to Claimant's testimony about the intensity of her back, neck, and head pain and, in any event, the record does not support the ALJ's findings.

---

[4] Only one of those reports was before the ALJ but, as discussed above, we review all the evidence submitted to the Appeals Council as if it had been before the ALJ. *Brewes*, 682 F.3d at 1163.

### 3.  *Secondary Gain*

The ALJ stated that, "although the claimant testified she missed work due to pain, her primary care physician, Dr. Riley, noted on July 13, 2007, that the claimant 'does not like work, has mentioned several times she does not care if they fire her' and questioned whether there was an issue of secondary gain." The ALJ is correct that Claimant testified that she missed work due to pain. Dr. Riley's note stated that Claimant "apparently does not like work much and has mentioned to me several times that she does not care if they fire her, and apparently there is some sort of conflict there. I am not sure if there is any secondary gain, but she is certainly not enamored of her job."

As an initial matter, the fact that Claimant did not like her job is not, without more, a valid reason to discredit her testimony about why she missed work. One can dislike (or like) a job and yet be forced to miss some days from work because of illness or pain. Rather, the ALJ apparently read Dr. Riley's note as questioning whether Claimant was exaggerating her symptoms *in order to* miss work that she disliked.[5] Read in that way, substantial evidence arguably supports the ALJ's finding. But even if we were to read Dr. Riley's note thus, we conclude that this one weak reason is

---

[5] If that is what Dr. Riley meant, he expressed the thought inartfully. "Malingering" or "exaggerating" is the appropriate term. "Secondary gain" means "external and incidental advantage derived from an illness, such as rest, gifts, personal attention, release from responsibility, and disability benefits." *Dorland's Illustrated Medical Dictionary* 721 (29th ed.). Secondary gain is not the same as malingering; secondary gain is an incidental advantage derived from an actual illness. That is, Claimant's illnesses and pain allowed her to miss work that she may have disliked. But that conclusion does not necessarily mean that she was malingering.

insufficient to meet the "specific, clear and convincing" standard on this record. *Molina*, 674 F.3d at 1112; *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (holding that "we must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." (citation and internal quotation marks omitted)). Dr. Riley treated Claimant for several years, and this is the only statement of its type. Moreover, Dr. Riley merely suggested that *perhaps* there was an issue of *secondary gain*—he did not affirmatively find that Claimant was exaggerating or malingering. Because the ALJ's other reasons—discussed above—are not supported by substantial evidence, and because this reason is weak on this record, we conclude that the ALJ erred in discrediting Claimant's testimony. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (holding that, when the ALJ errs, we must inquire "whether the ALJ's decision remains legally valid, despite such error").

B. *Dr. Riley's Assessment*

Dr. Riley, Claimant's treating physician, found that Claimant experienced headaches on a regular basis that "seriously affect[ed]" her ability to function. All other treating and examining doctors concluded that Claimant could perform medium exertion work with only minor limitations. The ALJ adopted the consensus view and rejected Dr. Riley's view. Claimant argues that the ALJ erred. As noted, because Dr. Riley's opinion was contradicted, we review the ALJ's rejection of Dr. Riley's opinion for "specific and legitimate reasons that are

supported by substantial evidence." *Bayliss*, 427 F.3d at 1216.

The ALJ gave two related reasons for rejecting Dr. Riley's assessment. The ALJ reasoned that Dr. Riley's opinions "are quite conclusory, providing very little explanation of the evidence relied on in forming that opinion." The ALJ also opined that Dr. Riley's conclusions were contrary to the medical evidence and to Dr. Riley's own treatment notes.

"[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, *and unsupported by the record as a whole or by objective medical findings*." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (emphasis added) (citation omitted). Indeed, Dr. Riley's assessments are of the "check-box" form and contain almost no detail or explanation. But the record *supports* Dr. Riley's opinions because they are consistent both with Claimant's testimony at the hearing and with Dr. Riley's own extensive treatment notes which, as discussed above, the ALJ largely overlooked. The ALJ clearly erred in his assessment of the medical evidence, overlooking nearly a dozen reports related to head, neck, and back pain.

The government offers a third reason: It was proper for the ALJ to reject Dr. Riley's assessment because Dr. Riley relied primarily on Claimant's own subjective reports. "An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (internal quotation marks omitted). The government's argument fails for two independent reasons. First, the ALJ never gave this reason

for rejecting Dr. Riley's opinion. We reiterate that we "are constrained to review the reasons the ALJ asserts." *Connett*, 340 F.3d at 874. Second, as noted above, the ALJ failed to give specific, clear, and convincing reasons for discrediting Claimant's testimony. Because the ALJ did not "*properly* discount[]" Claimant's testimony, this reason fails. *Tommasetti*, 533 F.3d at 1041 (emphasis added).

We conclude that, in rejecting Dr. Riley's assessment, the ALJ did not give specific and legitimate reasons supported by substantial evidence.

### C. *Remedy*

Because the ALJ erred, we next address the proper remedy. On this point, the parties offer starkly differing views. Claimant asserts that, because the ALJ's reasons for discrediting her testimony and Dr. Riley's assessment are legally insufficient, we have no choice but to credit as true both her testimony and Dr. Riley's assessment and, therefore, to remand for an award of benefits. The government asserts, by contrast, that our longstanding rule crediting evidence as true and remanding for an award of benefits is erroneous and that we have no choice but to remand on an open record for further proceedings.

Both parties overreach. We recently clarified the selection of an appropriate remedy in *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014). The government is incorrect that we may not credit evidence as true and remand for an award of benefits. *Id.* at 1020 n.25. But Claimant also is incorrect that we are required to credit evidence as true and remand for an award of benefits. *Id.* at 1020–21. Before we may remand a case to the ALJ with instructions to award

benefits, three requirements must be met: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* at 1020. Even if those requirements are met, though, we retain "flexibility" in determining the appropriate remedy. *Id.* at 1021. In particular, we may remand on an open record for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.*

Here, we need not determine whether the three preliminary requirements are met because, even assuming that they are, we conclude that the record as a whole creates serious doubt as to whether Claimant is, in fact, disabled. By contrast to *Garrison*, 759 F.3d at 1022, where the government did not "point to anything in the record that the ALJ overlooked and explain how that evidence casts into serious doubt Garrison's claim to be disabled," evidence in this record not discussed by the ALJ suggests that Claimant may not be credible. For example, Claimant's testimony at the hearing concerning her ability to knit appears to contradict the medical record. Similarly, the record suggests that Claimant's headaches were secondary to her neck problems, but her neck problems *improved*, both objectively and subjectively, after surgery. Viewing the record as a whole, we conclude that Claimant may be disabled. But, because the record also contains cause for serious doubt, we remand with instructions that the district court remand to the ALJ for further proceedings on an open record.

## CONCLUSION

Substantial evidence supports neither the ALJ's discrediting of Claimant's testimony nor the ALJ's rejection of Dr. Riley's medical assessment.  Accordingly, we reverse the district court's contrary conclusion.  Because the record creates "serious doubt" as to whether Claimant is, in fact, disabled, we remand to the district court with instructions to remand to the ALJ on an open record for further proceedings. We express no view as to the appropriate result on remand.

**REVERSED and REMANDED with instructions.**

SCHROEDER, Circuit Judge, dissenting:

I agree with the majority that substantial evidence supports neither the ALJ's discrediting of Claimant's testimony nor his rejection of treating physician Dr. Riley's medical assessment.  Yet the majority refuses to credit that evidence as true.

Our court has laid down three prerequisites for crediting such evidence as true: first, that the record is fully developed, and remanding for further proceedings would not be useful; second, that the ALJ failed to give legally sufficient reasons for rejecting the evidence; and third, that the discredited evidence would require the ALJ to find the claimant disabled if credited as true.  *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).  The majority assumes, without deciding, that these prerequisites are satisfied in this case.  I would hold they are satisfied.

The record is fully developed, including the testimony of a vocational expert. No further proceedings are required where a vocational expert answers questions about a hypothetical person with a claimant's alleged limitations. *See id.* at 1021 n.28. The reasons given by the ALJ for rejecting the evidence are not sufficient, as the majority holds. In my view, if that evidence is credited as true, Claimant is disabled.

Claimant testified that after back surgery for a tumor, she had great difficulty gripping and grasping items with her left hand. Because of back and neck pain, she could not sit, stand, or walk for long periods, and could lift no more than ten pounds. Claimant additionally suffered from debilitating headaches and migraines. Dr. Riley's reports reflect that the severity of her hand issues, chronic pain, and headaches seriously impacted her ability to perform work tasks. If this evidence is credited as true, there is no way that she could return to her previous employment as a receptionist and manicurist. The vocational expert also testified that with those limitations, Claimant is unable to sustain any other kind of work.

The majority nevertheless remands the case on an open record for further consideration. It does so on the basis of its conclusion that the record raises "serious doubt" as to whether Claimant is disabled. The majority identifies the correct legal standard from this court's recent opinion in *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014). *Garrison* analyzes our decisions involving the "credit-as-true" rule and holds that where the prerequisites are satisfied, we remand for an award of benefits. *Id.* at 1018–21. The only exception to the rule is where the record "as a whole" raises "serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *See id.* at 1021.

The majority invokes the exception, but without a record to support it.  The majority points to two relatively vague perceived inconsistencies: first, that the medical record concerning Claimant's ability to knit conflicted with her testimony at the hearing that she could no longer knit; and second, that the record suggests the headaches Claimant continued to complain of were secondary to her neck problems, and should have improved when the neck problems did.  My reading of the record reflects no inconsistency with respect to either.

The record as a whole reflects a progressive decline in Claimant's hand function that is consistent with her testimony at the hearing that she could no longer knit.  In July 2008, Claimant reported knitting, sewing, and doing lacework for several hours a day before her surgery, but the medical records show that her hand function deteriorated after the March 2009 procedure.  In July 2009, Claimant told her physical therapist she could do some sewing and knitting, but reported that she was down from knitting 500 stitches to 250. In September 2009, Claimant reported she was able to knit only 150–200 stitches at a time.  In November 2009, Claimant stopped physical therapy, with the therapist noting that her hand function was no longer improving with treatment.  At her hearing in December 2009, Claimant testified she "attempted to do the things that have always brought pleasure to me, like my s[e]wing, my knitting, my crocheting, my lace-making, and I am incapable of doing those things at this point."  Claimant's hearing testimony is consistent with her reports of an overall progressive decline in her hand condition after surgery.

Claimant's testimony regarding her ability to knit is no more inconsistent with the medical record than her testimony

regarding her difficulties vacuuming, which the majority rejects as a reason for finding Claimant's testimony not credible. *See* Maj. Op. at 8–9. The majority correctly observes that the physical therapy reports, stating Claimant could push a vacuum and was limited only "a little" in her ability to vacuum, were consistent with her later hearing testimony that she had trouble vacuuming "at this point." The majority should have recognized a progressive decline with respect to knitting as well.

Moreover, both knitting and vacuuming pertain to daily home activities that provide a questionable basis for discrediting pain testimony in any event. *See Garrison*, 759 F.3d at 1016. As we said in *Garrison*, "[w]e have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Id.*

As for the headaches, the majority recognizes that the ALJ erred in the finding that Claimant did not seek consistent treatment for her headaches after October 2008. Contrary to the ALJ's finding, there are at least six reports in the record of Claimant seeking headache treatment after that date. There is no medical opinion that the headaches should have disappeared after surgery. The most we have is a doctor's report speculating that Claimant's headaches were probably related to her neck issues on account of tension the latter produced. Yet Claimant's record of treatment for continuing headaches after surgery belies that speculation. Her testimony that her headaches continued after surgery even though the neck pain improved was consistent with the

medical record.  That testimony should not be considered undermined by a doctor's guesswork.

I would therefore follow the general rule as laid down in *Garrison* and remand the case for an award of benefits. Instead, the majority requires Claimant to endure another round of administrative hearings to consider a condition that came into existence seven years ago.

Accordingly, while I agree with much of the majority's reasoning, I must respectfully dissent from its bottom line. The Claimant should be awarded benefits now.