**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| BRUCE W. ALBERTSON, JR., | No. 13-56245 |
| Plaintiff - Appellant, | D.C. No. 2:12-cv-02508-JPR |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Central District of California
Jean Rosenbluth, Magistrate Judge, Presiding

Argued and Submitted April 7, 2016
Pasadena, California

Before:     TASHIMA, SILVERMAN, and GRABER, Circuit Judges.

Bruce Albertson applied for disability benefits in January 2009, claiming a

chronic headache. The administrative law judge ("ALJ") found that Albertson did

not testify credibly about the extent of his pain and the effect that it would have on

his ability to work. Accordingly, the ALJ denied benefits. Albertson appealed,

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

and the district court affirmed.[1]  We have jurisdiction under 28 U.S.C. § 1291.  We reverse and remand for an award of benefits.

## BACKGROUND

Claimant Bruce Albertson developed a sudden headache in October 2007. The pain was so severe that his wife took him to the emergency room.  Albertson had no prior history of headaches, and the emergency doctors could not determine the headache's cause.  The headache has persisted ever since.

Seeking a diagnosis, Albertson consulted with a series of doctors, including at least eight neurologists, over a period of three years.  The doctors were unable to settle on a conclusive diagnosis.  Albertson's pain did not improve with medication or other treatment, including an extended course of opiate painkillers, two occipital nerve blocks, and a radiofrequency ablation.

In January 2010, Albertson sought treatment at the Mayo Clinic.  There, he was diagnosed with New Persistent Daily Headache ("NPDH"), a new headache

---

[1]  While that appeal was pending, Albertson applied for disability benefits a second time, for the period beginning the day after the first ALJ's adverse decision.  Relying on nearly the same record as in the first proceedings, the second ALJ found Albertson disabled and awarded benefits.  We issued a limited remand of the pending appeal, allowing the district court to consider a motion to set aside its previous decision under Federal Rule of Civil Procedure 60(b).  The district court denied the motion, and Albertson again appealed.  The two appeals — from the affirmance of the first ALJ's adverse decision and the denial of the Rule 60(b) motion — were consolidated for our review.

occurring in a person who does not have a past history of frequent headaches, which persists on a daily basis for more than three months. The disorder is characterized by its sudden onset. The Mayo team believed that Albertson's previous pain prescriptions had exacerbated the headaches and recommended a different course of medication. The ALJ denied Albertson's application for benefits soon after.

## ANALYSIS

### 1.

Where a claimant "has presented evidence of an underlying impairment and the government does not argue that there is evidence of malingering," we review an ALJ's rejection of the claimant's testimony "for specific, clear and convincing reasons." *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (footnote and internal quotation marks omitted). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). Here, NPDH was a diagnosed, underlying impairment. And the ALJ determined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . ." *Albertson v. Colvin*, No. CV 12-2508-JPR, 2013 WL

3

2251639, at \*16 (C.D. Cal. May 22, 2013). Therefore, the ALJ was required to present specific, clear, and convincing reasons to reject Albertson's testimony about the extent of his NPDH-related symptoms. Yet, the ALJ never mentioned the NPDH diagnosis. In fact, the ALJ never even mentioned that Albertson was seen at the Mayo Clinic, much less what the Mayo Clinic's diagnosis was. This was error. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007) ("[A]n ALJ cannot avoid" the required deference to the treating physician's opinion "simply by not mentioning the treating physician's opinion and making findings contrary to it.").

The ALJ relied on the fact that Albertson could do basic household chores and occasionally run errands to support a finding that Albertson's pain did not interfere with his daily activities. "We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. Albertson testified that most of his day is spent laying down; he no longer socializes and avoids driving as much as possible. He cannot help with laundry or childcare. That Albertson could run errands or do chores on occasion is consistent

4

with testimony that he experiences constant mid-level pain that spikes to nearly unmanageable levels about twice per week. *Cf. id.* ("The ability to talk on the phone, prepare meals once or twice a day, occasionally clean one's room, and, with significant assistance, care for one's daughter, all while taking frequent hours-long rests . . . and lying in bed most of the day" was consistent with a claim of debilitating pain.). The ALJ did not provide specific, clear, and convincing reasons to reject Albertson's testimony.

The ALJ articulated no other reasonable basis for rejecting Albertson's pain testimony. Moreover, taken as a whole, the record strongly corroborates Albertson's credibility. Albertson continually sought treatment, asking for second, third, and fourth opinions when his original team was unable to identify the cause of his pain. Because Albertson had seen at least eight neurologists prior to the hearing, the record includes an extensive medical history documenting Albertson's consistently high levels of pain over time. There is no indication in the record that Albertson's physicians disbelieved his complaints; rather, they continued to adjust his medications, order new tests, and even performed minor surgery to discover the cause of Albertson's complaints. Finally, Albertson's record shows a high rate of compliance with the varying courses of treatment his doctors prescribed. *Cf. Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (noting that permissible reasons to

5

find a claimant's testimony not credible include an unexplained failure to seek treatment or comply with a prescribed treatment). The ALJ's adverse credibility determination was not supported by the record, and therefore failed to satisfy the requirement of providing a specific, clear, and convincing reason to discredit Albertson's pain-related tesimony. *Garrison*, 759 F.3d at 1016.

**2.**

"[I]n appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits." *Id.* at 1019. Under the three-part "credit-as-true" standard, we remand for benefits if each of the following conditions is satisfied:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* at 1020. The decision to remand for an award of benefits is always discretionary, and the court may decline to award benefits if there is "serious doubt" the petitioner is disabled. *Id.* at 1021. Here, Albertson meets all three conditions of the credit-as-true standard.

6

First, Albertson provides us with an expansive, and remarkably consistent, record; the Commissioner proffers no evidentiary conflict requiring further development. Second, as discussed above, the ALJ failed to provide legally sufficient reasons to support his adverse credibility determination. Third, as in *Garrison*, "the strength of the improperly discredited evidence, which we credit as true" requires a finding of disability on remand. *Id.* at 1022. After years of inquiry and a battery of tests, a team of doctors at the Mayo Clinic diagnosed Albertson with a rare disorder. Albertson testified that, as a result of this disorder, he has debilitating pain at least twice per week and is bed-ridden most days. At Albertson's hearing, the vocational expert agreed that if Albertson were to be absent more than three times per month due to pain, he would not be able to hold any job in the national economy. This is sufficient to require that the ALJ find Albertson disabled on remand.[2] *Id.* at 1021 n.28. There is no "serious doubt" that Albertson is disabled. *Id.* at 1021.

· ● ·

---

[2] The second ALJ to hear Albertson's claim considered the same medical evidence before us on appeal. That ALJ found Albertson disabled. Although, of course, we are not bound by the second ALJ's decision, it is consistent with our conclusion that the evidence requires a finding of disability in this case.

The judgment of the district court is reversed and remanded with instructions that the district court further remand this case to the Commissioner for the calculation and award of benefits.[3]

**REVERSED and REMANDED.**

---

[3]    We dismiss as moot the consolidated appeal from the district court's denial of Albertson's Rule 60(b) motion. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000).

Circuit Judge Graber

Albertson v. Colvin, No. 13-56245

I respectfully dissent.

In January 2011, the first ALJ denied benefits. More than two-and-a-half years later, a second ALJ granted benefits. In my view, the decision of the first ALJ was supported by substantial evidence and contained no legal error, and the two outcomes can be reconciled.

The majority asserts that the first ALJ ignored Claimant's Mayo Clinic visits. That assertion is incorrect. The ALJ cited the Mayo Clinic reports in noting that Claimant gave "a history of a mass on the right side of the forehead and chronic headaches since October 2007." AR 21 (citing AR 627). The ALJ found—consistent with the cited Mayo Clinic reports—that Claimant had the severe impairment of chronic headaches; the pivotal question was whether, in January 2011, the ALJ permissibly found that those headaches did not rise to the level of disability. In analyzing that question the ALJ again cited, among other sources in the record, the Mayo Clinic reports—when noting that Claimant's daily activities and social interactions were not impaired by his mental or physical conditions. AR 24 (citing AR 614-28) (Mayo Clinic reports stating that Claimant reported no impairment in activity or social interactions). After considering all the medical evidence, the first ALJ permissibly weighed that evidence and explained

in appropriate detail why he credited some physicians over others.

The first ALJ also permissibly found Claimant not fully credible as to his level of pain. Among other reasons, objective medical evidence did not support the claim of <u>disabling</u> headaches; conservative treatment for the headaches "seemed to help" (AR 25); and significant activities of daily living showed no physical restrictions. The ALJ also gave supported reasons to find that Claimant could perform light work despite the severe impairment of headaches—among other things, an expert so opined.

Even if the first ALJ's decision were incorrect, the standard for remanding for an award of benefits is not met because there is doubt about Claimant's disability during the relevant period. For example, Claimant continued to work for at least a year after he alleges the headaches began in 2007, quitting only after the family business, a car dealership, closed in 2008. At the first hearing Claimant testified that he worked through the end of 2008 and later received bonuses on account of his 2008 performance, which were paid in 2009.

Additionally, the decisions of the two ALJs can be reconciled. The first one permissibly found Claimant's extent-of-pain testimony not fully credible, while the second ALJ credited Claimant <u>and</u> examined <u>additional</u> medical evidence. Moreover, the first ALJ observed that Claimant testified that his headaches were

2

"becoming more severe" (AR 24; <u>see also</u> AR 188, where Claimant reported that his migraines had gotten worse), and a worsening of symptoms over time also allows the decisions to be reconciled.

For all those reasons, I cannot join the majority disposition.