NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DEC 7 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MARGARET MARTINEZ, | No. 16-15757 |
| Plaintiff-Appellant, | D.C. No. 1:14-cv-01548-SMS |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner Social Security, | MEMORANDUM[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Eastern District of California
Sandra M. Snyder, Magistrate Judge, Presiding

Submitted November 14, 2017[**]
San Francisco, California

Before: CLIFTON and FRIEDLAND, Circuit Judges, and SESSIONS,[***] District Judge.

Margaret Martinez appeals the district court's order affirming the denial by

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable William K. Sessions III, United States District Judge for the District of Vermont, sitting by designation.

an administrative law judge ("ALJ") of her application for Social Security disability benefits. We reverse and remand for the calculation of benefits.

## I.

Martinez's treating psychiatrists, Drs. Norberto Tuason and Robert Ensom, opined that Martinez had mental health limitations including Depression Recurrent Severe with Psychotic Features and Posttraumatic Stress Disorder that would prevent her from working. Martinez's treating primary care physicians, Drs. Antonio Villalvazo and Jacob Peters, opined that Martinez's pain from degenerative disc disease also would prevent her from working. The ALJ failed to give specific and legitimate reasons supported by substantial evidence to reject any of these treating doctors' opinions. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (articulating the standard for discounting a treating physician's contradicted opinion); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (explaining why treating physicians' opinions receive special consideration).

### A. Treating Psychiatrist Dr. Tuason

Dr. Tuason opined that Martinez had "extreme" limitations in her psychiatric functioning across a range of areas related to her ability to work, where "extreme" was defined as an "almost constant impact on work or total limitation."

The ALJ erred in disregarding Dr. Tuason's opinion based on a lack of findings included on the psychiatric opinion form he filled out, because Dr.

Tuason's opinion was supported by his treatment records. *See Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014). The ALJ isolated two treatment notes that reflected some improvements, rather than considering the treatment records as a whole, which showed the severity of Martinez's condition and supported Dr. Tuason's opinion. *See id.* at 1017; *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). And although the ALJ discounted Dr. Tuason's opinion on the ground that it conflicted with the findings of examining physician Dr. Swanson, the ALJ did not identify any meaningful conflict because he did not address either Dr. Swanson's memory testing, which placed Martinez in the thirteenth and third percentiles in immediate and delayed memory, or Dr. Tuason's repeated diagnosis of Depression Recurrent Severe with Psychotic Features and Posttraumatic Stress Disorder.

**B. Treating Psychiatrist Dr. Ensom**

Dr. Ensom opined that Martinez had "significant" impairments in her memory, concentration, and judgment and "significant" confusion and mood swings. "Significant" in this context was defined as an abnormality that impairs an "individual's ability to perform simple work for two hours at a time or for eight hours a day." Dr. Ensom documented a range of behaviors inconsistent with the working environment.

As he had with Dr. Tuason, the ALJ cited two treatment notes, taken out of

context, as inconsistent with Dr. Ensom's opinion. The ALJ concluded that Dr. Ensom's opinion conflicted with the findings of Dr. Swanson, but did not identify any meaningful conflict. *See Garrison*, 759 F.3d at 1012-13. And the ALJ cited some evidence that Martinez was engaged in daily activities, but it appears those activities were largely aspirational and, in any event, the activities do not suggest that Martinez could function in the workplace. *See Reddick*, 157 F.3d at 722-23; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

### C. Treating Physician Dr. Villalvazo

Dr. Villalvazo opined that Martinez could not perform full-time work at any level of exertion, primarily because of pain from her degenerative disc disease. He explained that she could sit for one or two hours, stand or walk for 30 minutes, and had to lie down for four hours in an eight-hour day.

Although the ALJ gave Dr. Villalvazo's opinion no weight, the ALJ did not cite specific, objective evidence that was actually inconsistent with Dr. Villalvazo's opinion. In particular, Dr. Wagner's observations as to Martinez's mobility do not necessarily conflict with Dr. Villalvazo's opinion. The diagnostic imaging showed more severe degenerative disc disease than acknowledged by the ALJ. And while the ALJ faulted Dr. Villalvazo for relying on Martinez's subjective complaints, the ALJ lacked an adequate basis to conclude that Dr. Villalvazo's opinion relied on subjective complaints. In any event, as explained

below, the ALJ did not provide adequate reasons for discounting Martinez's testimony, so Martinez's self-reports do not provide an adequate basis to disregard Dr. Villalvazo's opinion even if that opinion was based on her subjective complaints. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).

### D. Treating Physician Dr. Peters

Dr. Peters opined that Martinez's pain was "severe and disabling" and concluded that "[s]he is unable to work." The ALJ did not indicate what weight he gave to Dr. Peters's opinions regarding Martinez's physical impairments, though he gave no weight to Dr. Peters's opinions on Martinez's mental impairments. To the extent that the ALJ intended to discount Dr. Peters's opinions on Martinez's physical limitations, he did not provide a specific, legitimate basis for doing so because he only addressed Dr. Peters's range of motion findings, and he did not explain how any objective evidence was inconsistent with Dr. Peters's range of motion findings.

## II.

Martinez testified that her activities were extremely limited by her pain and depression. She said she stayed home every day, had no hobbies, could only focus for short periods, did not prepare meals, did not do laundry, only bathed with someone else at home to make sure she did not fall down, and did not go shopping on her own. She further testified that she needed to lie down intermittently for four

16-15757

hours a day.

The ALJ appropriately concluded that Martinez presented objective medical evidence of impairments that could be expected to produce her symptoms—specifically, degenerative disc disease and severe depression—but erred in the reasons provided for discrediting Martinez's statements and testimony about the severity of those symptoms. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (setting out two-step process for evaluating a claimant's testimony).

The ALJ did not provide specific findings supported by clear and convincing reasons to discount Martinez's testimony about the severity of her symptoms. *See id.* A large part of the ALJ's discussion of Martinez's credibility concerned apparent inconsistencies unrelated to her symptoms, when the ALJ should have focused on testimony as to Martinez's symptoms. *See* 20 C.F.R. § 404.1529(c)(4); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see also* SSR 16-3P, 2016 WL 1119029, at *1 (Mar. 16, 2016). Furthermore, the ALJ's analysis did not reflect consideration of how Martinez's memory limitations might have affected her testimony. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1164 (9th Cir. 2012). While the ALJ cited Martinez's frequent napping as evidence that she was sleeping normally, frequent napping is at least as consistent with poor sleep during the night as it is with good sleep. The ALJ also discounted Martinez's testimony based on her daily activities but, as with his analysis of Dr. Ensom's

opinion, did not support the conclusions as to the frequency of those activities or their transferability to the workplace. *See Garrison*, 759 F.3d at 1016; *Fair*, 885 F.2d at 603. The ALJ appeared to discount Martinez's testimony based on an ALJ's conclusions after a hearing on a previous Social Security disability application filed by Martinez but did not identify what part of Martinez's testimony in this case he believed was contradicted by the previous ALJ's credibility determination. The concerns identified by the ALJ in the previous proceeding are not present in this one. Finally, the absence of corroborating medical evidence about Martinez's slurred speech and bad eyesight provided sufficient reason to discount her testimony as to those symptoms but did not provide a sufficiently specific, clear, and convincing ground to reject Martinez's testimony more generally. *See Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017).

### III.

"[A]n ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (internal quotation marks omitted). Rejecting the opinions of Martinez's treating doctors and testimony from Martinez clearly affected the ALJ's determination of Martinez's residual functional capacity. *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988). Whereas Martinez and her treating physicians all

16-15757

described her as extremely limited in her activities, the ALJ's residual functional capacity determination reflected much less severe limitations. The residual functional capacity determination was in turn the basis for the vocational expert's testimony, which was the basis for the ALJ's conclusion that Martinez was not disabled. The ALJ's errors in discounting the opinions of Martinez's doctors and testimony from Martinez were therefore not harmless. *See Molina*, 674 F.3d at 1115.

## IV.

Martinez argues that she is entitled to a remand for calculation of benefits under our court's "credit as true" rule. *Garrison*, 759 F.3d at 1020. We agree. The record is fully developed. The evidence of Martinez's disabilities from her treating physicians is extensive, and their opinions are unanimous that Martinez has severe limitations that would clearly prevent her from working. The evidence of Martinez's disability in the treatment records is much stronger than what appears to have been in the record in cases in which we have declined to apply the credit as true rule. *Compare Leon v. Berryhill*, 874 F.3d 1130, 1134-36 (9th Cir. 2017); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1104-05 (9th Cir. 2014). No further evidence is needed. As discussed, the ALJ failed to provide legally sufficient reasons for rejecting the evidence from Martinez and her treating physicians. And if the improperly discredited evidence were credited as true, the

ALJ would be required to find Martinez disabled. Even if Martinez could manage to work a few hours a day, punctuated by frequent rest breaks when she would need to lie down, this abbreviated work schedule would not constitute the ability to engage in substantial gainful activity such that Martinez could be found not to be disabled. *See Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (observing that "the capability to work only a few hours per day does not constitute the ability to engage in substantial gainful activity"); SSR 96-8P, 1996 WL 374184, at *2 & n.2 (July 2, 1996) (explaining that the residual functional capacity determination reflects the maximum capacity to do sustained work activities in an ordinary work setting, eight hours a day, for five days a week). Evaluating the record as a whole, we have no serious doubt that Martinez is disabled, *Garrison*, 759 F.3d at 1021, so further proceedings "would merely delay the award of benefits." *Rodriguez*, 876 F.2d at 763.

Accordingly, we **REVERSE** and **REMAND** for an award of benefits.