NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUL 5 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

LISA LEITZ,

                Plaintiff-Appellant,

v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

                Defendant-Appellee.

No.   22-35356

D.C. No. 2:21-cv-00198-TOR

MEMORANDUM[*]

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, District Judge, Presiding

Argued and Submitted April 18, 2023
Portland, Oregon

Before: RAWLINSON, BEA, and SUNG, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge RAWLINSON.

    Lisa Leitz filed for social security disability on October 18, 2016, and alleged

that her disability had an onset date of May 30, 2014.  Leitz based her claim on

allegations of diabetes, post-traumatic stress disorder, cardiac impairments, strokes,

neuropathy, chronic pain, and a neck injury.  The parties are familiar with the facts

---

      [*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

and procedural history, so we do not recite them here. For the reasons stated below, we reject all of Leitz's arguments, save one: The ALJ's training-period caveat in the assessment of Leitz's residual functional capacity ("RFC"), which held that Leitz could maintain sustained contact with supervisors during training periods but only occasional contact during other work periods, was improper. We therefore vacate and remand for an award of benefits.

1.     Leitz argues that the ALJ failed to consider her borderline age category. "Although an ALJ is required by regulation to *consider* whether to use an older age category in a borderline situation, there is no requirement that the ALJ explain in her written decision why she did not use an older age category." *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1070 (9th Cir. 2010). In *Lockwood*, we found that the ALJ had sufficiently considered the claimant's age because the ALJ (1) mentioned the claimant's date of birth and age, (2) "cited to 20 C.F.R. § 404.1563, which prohibited her from applying the age categories mechanically in a borderline situation," and (3) evaluated the overall impact of all the factors in the claimant's case by relying on the testimony of a vocational expert. *Id.* at 1072.

In this case, the ALJ (1) mentioned Leitz's birthday and pointed out that Leitz had changed age categories since she filed her claim, (2) cited 20 C.F.R. § 404.1563, and (3) relied on the testimony of a vocational expert and instructed the vocational expert to "assume a person of [Leitz]'s age," among other things. That evidence is

2

sufficient to demonstrate that the ALJ had considered Leitz's borderline age category.

2. Leitz argues that the ALJ erred in rejecting her subjective symptom testimony. However, the ALJ's rejection of Leitz's testimony was valid. Leitz's description of the severity of her neck injuries was contradicted by objective testing of Leitz's muscular abilities. Leitz's description of her migraines was contradicted by record evidence indicating that her migraines were relieved through treatment. Leitz's description of the severity of her cardiac disorder was contradicted by record evidence indicating substantial improvement and positive performance in cardiac functioning over time.

Even if some of the ALJ's other reasons for discounting Leitz's testimony were improper, the ALJ's decision to discount Leitz's testimony was valid for the above reasons. "So long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such [error] is deemed harmless and does not warrant reversal." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (cleaned up).

3. Leitz argues that the ALJ's rejection of her supporting medical opinions was improper. We find no error. The ALJ's was not required to address the limitations identified in Dr. Atteberry' post-surgery discharge instructions because

3

they were not long-term functional limitations. The ALJ's rejection of Dr. Becerril's opinion was reasonable because Dr. Becerril relied on factors unrelated to Leitz's impairments in assessing her functional limitations. The ALJ's rejection of Dr. Tolliver's opinion was reasonable because Dr. Toliver's opinion was unsupported by objective testing and evidence and was inconsistent with the treatment records. The ALJ's rejection of Dr. Palasi's opinion was reasonable because Dr. Palasi's opinion was unsupported by objective testing and evidence and was inconsistent with the treatment records. The ALJ's rejection of Dr. Canaday's opinion was reasonable because Dr. Canaday's opinion included an opinion on an issue specifically reserved for the Commissioner and because Dr. Canaday's opinion lacked specificity and was contradicted by the objective evidence in the record. The ALJ's acceptance of Dr. Krishnamuathi's opinion was not unreasonable. Dr. Krishnamuathi's opinion is internally consistent and clear, and Dr. Krishnamuathi's assessment of Dr. Becerril's opinion was consistent with the record evidence. The ALJ's did not mischaracterize Dr. Thompson's opinion. Dr. Thompson's finding that Leitz "would most likely be at light RFC by or before 1 year duration" is consistent with the ALJ's finding that Leitz could perform light work.

4.    Leitz argues that the ALJ failed to assess headaches at Step Two, failed to assess headaches at Step Three, and failed to account for migraine-related impairments in the RFC. As explained above, the ALJ relied on substantial evidence

4

in rejecting Leitz's description of the severity of her headaches. Because the ALJ's rejection of Leitz's headache testimony was proper, the ALJ had a sufficient basis to reject any migraine-related limitations.

5.      In the ALJ's RFC finding, the ALJ held that Leitz "can have brief, superficial interaction with co-workers and the public; and can have occasional interaction with supervisors (although additional time for training is acceptable)." Leitz argues that the parenthetical in the ALJ's assessment of Leitz's RFC is a caveat not supported by substantial evidence.

The ALJ did not explain the evidentiary basis for his training-period caveat, but the Government argues that the caveat rests on a "common sense" inference from the record: "[Leitz] could tolerate more that occasional interactions with supervisors at work, but only for a short period of time (up to one month); after that, because of her anxiety and PTSD, Leitz needed to reduce her supervisor interactions to only occasional." The Government cites no evidence to support this explanation and does not explain from where the "one month" timeframe originated. The ALJ did not state in his opinion what the Government's attorney now presents as an explanation for the RFC.

This Court is "constrained to review the reasons the ALJ asserts." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (cleaned up). An ALJ's decision must be analyzed based on his reasoning and findings, "not post hoc rationalizations that

5

attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009). Without an explanation for the training-period caveat, the court is left to speculate as to what evidence, if any, is the basis of the ALJ's reasoning and conclusion.

The ALJ did not state how long Leitz could tolerate extended contact with supervisors. While the Government asserts that the ALJ intended to permit "up to a month" of training time, the sole vocational expert testified that the relevant jobs would require at least ninety days of training.

But no matter whether the caveat was one month or ninety days, the caveat is not supported by substantial evidence. There is no evidence in the record which indicates that Leitz's mental problems are somehow alleviated during training periods because they are less likely to include supervisor interactions than other work periods, or that employers would be willing to tolerate her limitations during training periods. In fact, common experience tends to indicate that training time— the first few months on the job—would be the time when most frequent supervisorial interaction would be required to teach a new hire the job.

Because the training-period caveat has no foundation in any part of the record and is wholly unexplained, we cannot say that the caveat is supported by substantial evidence. The caveat and its conclusion cannot be sustained.

6.      Leitz argues that we should remand for an award of benefits. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citation omitted). In this case, the vocational expert clearly testified that Leitz would not have the RFC to perform the any of the available jobs unless her RFC included the training-period caveat. Thus, without the training-period caveat, Leitz must be considered disabled. The record therefore demonstrates that Leitz is entitled to benefits when the training-period caveat is struck from the RFC. *See Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1998).

The Government argues that we should remand for further proceedings rather than remand for an award of benefits. However, remand would serve no legitimate purpose. No evidence in the record supports the training-period caveat, and permitting the Government to introduce additional evidence on remand would provide the Government with an unfair second opportunity to present its case. *See Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004). And on remand, the ALJ would be bound to conclude that Leitz's RFC is limited to "brief, superficial interaction with co-workers and the public" and "occasional interaction with supervisors" because the ALJ has already rejected the Government's medical

7

testimony which supported a higher RFC, and the ALJ's determinations have become law of the case. *See Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016); *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993). We therefore remand to the district court with instructions to remand to the agency for an award of benefits.

**VACATED AND REMANDED.**

*Leitz v. Kijakazi*, Case No. 22-35356
**Rawlinson, Circuit Judge, concurring in part and dissenting in part:**

I concur in the disposition of this case by my esteemed colleagues, with the exception of the remand for award of benefits, to which I respectfully dissent.

Our precedent starts from the premise that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015), *as amended* (citation omitted). "[W]e generally remand for an award of benefits only in rare circumstances, where no useful purpose would be served by further administrative proceedings." *Treichler v. Comm'r.*, 775 F.3d 1090, 1100 (9th Cir. 2014) (citations and internal quotation marks omitted). We follow three steps in making the determination whether to remand for an award of benefits. *See id.* The first step is to determine "whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Id.* at 1100-01 (citations and internal quotation marks omitted).

The second step is to determine "whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful." *Id.* at 1101 (citations and internal quotation marks omitted).

1

For the final step, if "no outstanding issues remain and further proceedings would not be useful," "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule." *Id.* (citation and footnote reference omitted). Stated differently, we *may* exercise our discretion to remand for the award of benefits only if we are satisfied that "further proceedings would not be useful." *Id.*

Applying these precepts to the facts of this case, I cannot agree that a remand for award of benefits is proper. I agree that the ALJ erred and injected uncertainty into its decision when it added the unexplained parenthetical that "additional time for training is acceptable" to the Residual Functional Capacity finding of "occasional interaction with supervisors." We don't know what the ALJ meant by "additional time" or what the duration of the "training" period would be. These questions could be answered by the ALJ if we remanded for further administrative proceedings and clarification from the ALJ. *See id.*

The majority implicitly cedes this point by observing that "[t]he ALJ did not explain the evidentiary basis for his training-period caveat." *Majority Disposition*, p.5. Under our precedent, the case should be remanded for the ALJ to provide this explanation and "further administrative proceedings would be useful." *Treichler*, 775 F.3d at 1101. Because further explanation from the ALJ "would be useful,"

2

*id.*, in evaluating whether the ALJ's residual functional capacity decision is supported by substantial evidence, *id.*, this is not one of the "rare circumstances" where a remand for award of benefits is proper. *Id.* at 1100. Rather, we should comply with "the ordinary remand rule," *id.* at 1099 (citation and internal quotation marks omitted), and remand this case to the ALJ for "additional . . . explanation." *Id.* (citation and footnote reference omitted). Because the majority disposition's departure from this rule is not supported by our precedent, I respectfully dissent.