**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SARAH E. DALE,

       *Plaintiff-Appellant*,

v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

       *Defendant-Appellee.*

No. 14-35583

D.C. No.
3:13-cv-01187-HZ

OPINION

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernandez, District Judge, Presiding

Submitted December 31, 2015[*]
San Francisco, California

Filed May 19, 2016

Before: Edward Leavy, Susan P. Graber,
and John B. Owens, Circuit Judges.

Opinion by Judge Graber;
Dissent by Judge Leavy

---

[*] The panel unanimously concludes that this case is suitable for decision without oral argument. Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

### Social Security

The panel reversed the district court's judgment affirming the Commissioner of Social Security's denial of a claimant's application for supplemental security income under Title XVI of the Social Security Act; held that the administrative law judge ("ALJ") erred in according "limited weight" to the opinion of a nurse practitioner; and remanded for further proceedings.

Nurse practitioners are considered "other sources." 20 C.F.R. § 404.1513(a) & (d)(1).

The panel held that an ALJ errs when he discounts an other source's *entire* testimony because of inconsistency with evidence in the record, where the ALJ had divided the testimony into distinct parts and determined that only one part of the testimony was inconsistent. The panel held that the ALJ's determination in this case – that the nurse practitioner's opinion regarding claimant's "exertional and postural" limitations was inconsistent with other evidence in the record – was an insufficient reason to reject her testimony regarding claimant's manipulative and mental limitations. The panel held that the error was not harmless because the vocational expert opined that a person with the mental limitations identified by the nurse practitioner could not work.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that further administrative proceedings were required to reconcile all the record evidence and to consider additional issues, such as the onset date of claimant's disability, if any.

Judge Leavy dissented, and he would hold that the ALJ gave specific, supported, and germane reasons for discounting the nurse practitioner's opinion, and the Commissioner's decision denying benefits should be affirmed.

## COUNSEL

Merrill Schneider, Schneider, Kerr & Gibney Law Offices, Portland, Oregon, for Plaintiff-Appellant.

Lisa Goldoftas, Assistant Regional Counsel, David Morado, Regional Chief Counsel, Social Security Administration, Office of the General Counsel; Ronald K. Silver, Assistant United States Attorney, and S. Amanda Marshall, United States Attorney, Seattle, Washington, for Defendant-Appellee.

**OPINION**

GRABER, Circuit Judge:

Claimant Sarah E. Dale appeals the district court's judgment affirming the Commissioner of Social Security's denial of her application for supplemental security income under Title XVI of the Social Security Act. An administrative law judge ("ALJ") found that, despite having severe impairments, Claimant is not disabled. The sole issue on appeal is whether the ALJ erred in according "limited weight" to the opinion of a nurse practitioner. We hold that the ALJ did err and, therefore, reverse and remand for further proceedings.

FACTUAL AND PROCEDURAL HISTORY

Claimant was born in 1985. She had a difficult childhood, experiencing both sexual and physical abuse; frequent moves; exposure to violence and drugs; and the death of her mother when she was 12 years old. At age 17, she earned a GED, which is the equivalent of a high school diploma. She also completed a residential drug treatment program to deal with methamphetamine use. Claimant has two young children and a minimal work history.

In late 2009, Claimant filed an application for supplemental security income, alleging that she had been disabled since January 1, 2007. Claimant alleged that her disability resulted from post-traumatic stress disorder ("PTSD"), anxiety, panic disorder, degenerative disc disease, high blood pressure, and dyslexia. The claim was denied initially and on reconsideration.

At Claimant's request, a hearing was held on her claim. The ALJ received testimony from Claimant, a lay witness, and a vocational expert. The ALJ also reviewed the medical records. Applying the familiar five-step sequential evaluation, 20 C.F.R. § 416.920, the ALJ denied benefits, concluding:

• Step One: Claimant had not engaged in substantial gainful activity since her application date.

• Step Two: Claimant had severe impairments, specifically, mild degenerative disc disease of the lumbar spine; minimal disc bulging in the cervical spine; anxiety; and panic disorder.

• Step Three: Claimant's impairments did not meet or equal a listed impairment.

• Step Four: Claimant had no past relevant work.

• Step Five: Claimant's residual functional capacity ("RFC") allowed her to perform light work, except that she could occasionally climb ladders, ropes, and scaffolds and could frequently climb ramps and stairs. Claimant could frequently balance, stoop, kneel, crouch, and crawl. She could reach overhead with her left arm, occasionally. But she was limited to performing simple, routine tasks that involved no more than occasional interaction with coworkers and the public. The ALJ next found that there were jobs that existed in significant numbers in the national economy that Claimant could perform, including assembler, cleaner/polisher, and night cleaner or housekeeper. Thus, Claimant was not disabled.

The Appeals Council denied Claimant's request for review, making the ALJ's decision the Commissioner's final decision. The district court affirmed the Commissioner's decision and dismissed the case with prejudice. This timely appeal followed.

## STANDARD OF REVIEW

We review the district court's decision de novo. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). We must affirm the Commissioner's final decision if it is supported by substantial evidence and is free of legal error. 42 U.S.C. § 405(g).

## DISCUSSION

The sole issue on appeal is whether, at Step Five, the ALJ erred by improperly evaluating the opinion of Laurie Beeson, a family nurse practitioner. Nurse practitioners are considered "other sources." 20 C.F.R. § 404.1513(a) & (d)(1); *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015) (per curiam). "The ALJ may discount testimony from these 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'" *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

Beeson completed a medical questionnaire in 2012. Beeson provided opinions concerning both Claimant's physical limitations and her mental limitations. Beeson had been treating Claimant for about three years. She opined that Claimant's medical conditions included chronic back pain, generalized anxiety disorder, panic disorder (with agoraphobia and panic attacks), PTSD, obesity, incontinence,

hypertension, left shoulder pain, and chronic leg pain. Claimant's main problems consisted of panic disorder, agoraphobia, and lower back pain with sciatica in the left leg.

With respect to Claimant's physical functional capacity, Beeson stated that Claimant could lift or carry less than ten pounds frequently and occasionally, stand or walk fifteen minutes at a time for a total of two hours per day, and sit two hours at a time for a total of eight hours per day. Claimant was limited in both upper and lower extremities; Claimant's ability to push and pull was limited, she could never climb, balance, crouch, or crawl, and she could occasionally stoop, bend, kneel, and engage in gross manipulation.

With respect to mental impairments, Beeson opined that Claimant was moderately limited in concentration, persistence, and pace. Because of her fear of leaving her house, Claimant's social functioning was markedly limited due to agoraphobia. Claimant's ability to handle the stress of performing even simple, routine work was limited by what Beeson considered a "severe anxiety disorder." Claimant's attention and concentration would likely be impaired such that she would be unable to perform even simple work tasks for 20 percent of the workweek. Because of Claimant's mental impairments, Beeson expected her to miss 16 hours or more per month from even a simple and routine sedentary job. The vocational expert testified that a person with those mental limitations would not be able to perform any jobs in the economy.

The record also contained opinions from a non-examining physician, a non-examining psychologist, and an examining neurologist. The ALJ gave "great weight" to the psychologist's opinion but only "limited weight" to Beeson's

opinion.  The ALJ's reason for discounting Beeson's opinion reads, in full:

> Overall, the longitudinal record, including Ms. Beeson's treatment notes[, does] not objectively support the degree of exertional and postural limitation that she proposes. Nevertheless, the residual functional capacity found in this decision includes manipulative and mental limitations that are generally consistent with Ms. Beeson's assessment.
>
> That is, the ALJ found a single inconsistency: Beeson's evaluation of Claimant's *exertional and postural* limitations was not supported by her own treatment notes.  By contrast, the ALJ gave *no* reason—germane or otherwise—to discount Beeson's assessment of Claimant's *manipulative and mental* limitations, which differed from the assessment given by the psychologist to whose opinion the ALJ deferred.  And, of course, we are limited to considering the reasons the agency gave for its decision.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225–26 (9th Cir. 2009).

Typically, of course, the reason for discounting an "other" source applies to the entire testimony of the witness.  For example, in *Turner*, the source did not give an opinion about the claimant's condition until two years after the date last insured—making the opinion only marginally relevant—and the source's entire testimony differed from the opinion of all the doctors.  613 F.3d at 1224.  In *Molina*, the source's

opinion on the sole issue in dispute conflicted with her own earlier assessment of the claimant and with the opinion of the relevant medical specialist. 674 F.3d at 1111–12. Other examples readily come to mind. For example, an ALJ may discount a witness' testimony because of bias. *See Valentine*, 574 F.3d at 694 (explaining that claims of bias "in the abstract" are inadequate, but evidence that a witness exaggerated a claimant's symptoms for the witness' benefit could support a finding of bias). Reasons such as these apply to a witness' entire testimony. Often, too, as in *Molina*, the other source gives an opinion about only one thing, so that a germane reason necessarily applies to the source's whole opinion.

Here, however, the situation is different. The ALJ himself divided Beeson's testimony into two parts: (1) "exertional and postural" limitations and (2) "manipulative and mental" limitations.[1] As to the former, the ALJ permissibly discounted Beeson's testimony on the ground that her treatment notes did not objectively support the degree of limitation proposed. As to the latter, the ALJ stated his intention to devise an RFC finding that was "generally consistent with Ms. Beeson's assessment"—that is, to credit, or at least not contradict, Beeson's opinion of

---

[1] The dissent contends that the ALJ's division of Beeson's testimony "originated in the format supplied by Dale's attorney." Dissent at 15. Whether the attorney or the ALJ was first to separate physical and mental limitations is immaterial. What matters is that the ALJ independently adopted the two-part structure and clearly stated that, although he rejected Beeson's assessment of the exertional and postural limitations, the manipulative and mental limitations assessment was "generally consistent" with the RFC. As explained above, however, the RFC *was not* consistent with either part of Beeson's testimony.

Claimant's "manipulative and mental" limitations.[2]  But in fact the RFC differs markedly from Beeson's view.  For example, the ALJ found that Claimant could only occasionally reach overhead, whereas Beeson found that she could frequently reach overhead.  Beeson limited Claimant to only occasional handling with both upper extremities, but the RFC did not include limitations as to her handling capabilities.  Lastly, the RFC failed to incorporate mental limitations consistent with Beeson's opinion, such as her findings that Claimant would be unable to perform simple work tasks for 20 percent of the workweek and would be expected to miss at least two days of work per month due to her anxiety and PTSD.

We have not addressed in our past cases the question whether an ALJ may discount the *entire* medical opinion of an other source when the ALJ has divided the opinion into *distinct parts* and only *one of those parts* is inconsistent with objective evidence in the record.  But we have upheld an ALJ's decision to reject *only* the part of a lay witness' testimony that was inconsistent with objective evidence in the record.  *See, e.g.*, *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  We now hold that an ALJ errs when he discounts an other source's *entire* testimony because of inconsistency with evidence in the record, when the ALJ has divided the testimony into distinct parts and determined that

---

[2]  Beeson's treatment notes with respect to Claimant's manipulative and mental impairments, unlike her treatment notes with respect to exertional and postural limitations, appear to be consistent with her assessment.

only one part of the testimony is inconsistent.[3]  Thus, the ALJ's determination in this case that Beeson's opinion regarding Claimant's "exertional and postural" limitations was inconsistent with other evidence in the record was an insufficient reason to reject her testimony regarding Claimant's manipulative and mental limitations.[4]

That error was not harmless, *Molina*, 674 F.3d at 1115, because the vocational expert opined that a person with the mental limitations identified by Beeson could not work.  But further proceedings are required to reconcile all the record evidence and to consider additional issues, such as the onset

---

[3]  We need not decide whether an ALJ who has *not* divided an other source's testimony into distinct parts may discount that witness' entire opinion when only some of the opinion is inconsistent with evidence in the record.  We note, however, that at least one district court within our circuit has concluded that the ALJ may not dismiss an other source's entire opinion in such circumstances. *See McCann v. Colvin*, 111 F. Supp. 3d 1166, 1174 (W.D. Wash. 2015) (citing *Bayliss* and holding that, when an ALJ discounts the opinion of an other source because it is "inconsistent with the objective evidence in the record, he must discount only those portions of the opinion that are actually inconsistent, not those parts which are uncontradicted").

[4] The dissent asserts that the ALJ permissibly rejected Beeson's opinion regarding the manipulative and mental limitations because the opinion was manipulated by Dale's lawyer or was "pure conjecture and relie[d] only on Dale's self-reported symptoms."  Dissent at 15.  But the ALJ did not state any such reasoning in his decision—much to the contrary, he suggested that he was *accepting* Beeson's recommendations regarding the manipulative and mental limitations.  Therefore, we may not consider on appeal the reliability of Beeson's opinion regarding the manipulative and mental limitations. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

date of Claimant's disability, if any. Accordingly, we reverse and remand for further administrative proceedings.

**REVERSED and REMANDED.**

LEAVY, Circuit Judge, dissenting.

The ALJ, applying the standard legal framework, determined that Dale was not "disabled" as defined in the Social Security Act. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any *medically determinable physical or mental impairment* which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added); *see also* 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities *which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques*." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D) (emphasis added). *See Ukolov v. Barnhart*, 420 F.3d 1002, 1004–05 (9th Cir. 2005) (quoting same).

Nurse practitioner Laurie Beeson was one of several employees of the Multnomah County Health Department who treated Dale's impairments. The ALJ stated in his findings of fact:

> Treatment notes from Multnomah County Health Department show the claimant carrying diagnoses for various mental impairments, including panic disorder,

generalized anxiety, depressive disorder, and posttraumatic stress disorder. (Exhibit 2F). These assessments were made by *non-physician treatment providers* and do not include *any objective testing*."[1] (emphasis added).

In evaluating the severity of mental impairments, the ALJ is required to "specify the symptoms, signs, and *laboratory findings* that substantiate the presence of the impairment(s) and document [the findings]." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1) (emphasis added). The ALJ noted that Dale received mental health treatment from Western Psychological & Counseling Services with a diagnosis summary by a psychologist who listed the diagnoses of generalized anxiety disorder and panic disorder with agoraphobia.

As a general matter, a nurse practitioner is an "other source" for the purposes of medical testimony, *see* 20 C.F.R. § 404.1513(a) & (d), and, as such, the ALJ is entitled to give less weight to an "other source" medical opinion by providing "reasons germane to each witness for doing so." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (internal quotations omitted). The "reasons germane to the witness" standard originated in *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), and is applied to review "other source" as well as lay evidence. *See, e.g.*, *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015) (nurse practitioner); *Bayliss* 427 F.3d at 1218 (lay witness). The ALJ stated that

---

[1] Beeson's treatment notes dated in April 2011 stated that Beeson had last seen Dale two months earlier. Dale told Beeson that she made the current appointment because "she is applying for disability and [was] advised by her lawyer she is not coming in frequent [sic] enough."

Beeson "normally would not be an acceptable source to proffer a medical opinion." The ALJ nevertheless considered Beeson's opinion because the ALJ stated "[Beeson] has a treating relationship with the claimant."

Beeson's opinion consisted of a check-the-box questionnaire created and supplied by Dale's attorney. The 5-page questionnaire assessed Dale's residual functional capacity and covered physical limitations followed by mental limitations. Beeson checked the various boxes for most of her answers and gave several brief explanations for other answers. Beeson checked a box indicating that Dale's attention and concentration would be impaired to such a degree that she could not be expected to perform even simple work tasks for 20 percent of the work week. Beeson also checked a box indicating that she expected Dale to miss 16 hours or more per month from even a simple and routine sedentary job because of Dale's anxiety and posttraumatic stress disorder. Beeson cited no supporting medical evidence. When asked to state "findings that support your opinion" as to Dale's anxiety disorders, Beeson left the answer blank, which was consistent with the ALJ's finding that the Multnomah County Health Department did not perform objective testing of Dale's mental impairments.

Dale contends "The ALJ's failure to expressly reject or account for Nurse Beeson's findings that Ms. Dale could only perform occasional handling, would be off task for 20 percent of the time, and would miss more than two days of work per month ('manipulative and mental limitations') is the *dispositive issue* and constitutes reversible error." (emphasis added).

The ALJ committed no legal error by discounting Beeson's opinion because the ALJ determined that Beeson's treatment notes did not support her proposed degree of exertional and postural limitations, and the mental assessments from non-physician treatment providers (including Beeson's opinion as to Dale's mental impairments) were unsupported by clinical evidence. *See Molina v. Astrue*, 674 F.3d 1104, 1111–12 (9th Cir. 2012) (ALJ permissibly discounted the nurse practitioner's check-off report that failed to provide supporting reasoning or clinical findings); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ properly rejected a doctor's opinion as to the claimant's mental impairment because the opinion was not supported by clinical evidence); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (ALJ need not accept a medical opinion if it is inadequately supported by clinical findings). Accordingly, the ALJ properly accounted for and discounted Beeson's entire opinion.

The "majority holds that the ALJ erred in discounting Beeson's entire opinion when the ALJ "has divided the opinion into distinct parts and only one of those parts is inconsistent with other objective evidence in the record." I disagree. The division of Beeson's opinion in this case originated in the format supplied by Dale's attorney, which tracks the categories set forth in the regulations for residual functional capacity. Beeson's opinion as to Dale's exertional and postural limitations was inconsistent with her own treatment notes. Beeson's opinion as to Dale's manipulative and mental limitations, specifically regarding the "dispositive" issue of Dale's work absenteeism, is pure conjecture and relies only on Dale's self-reported symptoms. *See Bayliss* 427 F.3d at 1217 (the ALJ properly rejected an opinion rendered on the basis of subjective complaints);

*Ukolov*, 420 F.3d at 1005 (discussing the requirement of objective medical evidence to a determination of an impairment).

Because the ALJ gave specific, supported, and germane reasons for discounting Beeson's opinion, the Commissioner's decision denying benefits should be affirmed. Even assuming possible merit in the majority's requirement when an ALJ divides "other source" testimony into "distinct parts," that situation is not present in this case. Here, the ALJ correctly determined that the mental impairment assessments from a non-physician treatment provider were unsupported by objective medical evidence.