**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAR 29 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MICHELE BELANGER, | No.    14-35632 |
| Plaintiff-Appellant, | D.C. No. 6:07-cv-01727-AA |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner Social Security, | MEMORANDUM [*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, District Judge, Presiding

Submitted March 9, 2017[**]
Portland, Oregon

Before:  O'SCANNLAIN, FISHER, and FRIEDLAND, Circuit Judges.

Michele Belanger appeals the district court's order affirming the denial of

her application for Social Security disability benefits.  Her application was denied

initially and on reconsideration.  Following remands from the Appeals Council and

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

district court, an administrative law judge (ALJ) found Belanger not disabled and the district court affirmed. We reverse and remand for further proceedings.

## I.

Belanger contends that the ALJ erred by giving only some weight to the opinions of treating physicians Drs. Hansen and Doak and examining physician Dr. Kemple. When faced with contradictory opinions, the ALJ must give specific and legitimate reasons supported by substantial evidence in the record to reject a treating physician's opinion. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctor['s], are correct." *Id.* Similarly, an ALJ must give specific and legitimate reasons that are supported by substantial evidence to reject the contradicted opinion of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

### A. Treating Physician Dr. Hansen

Dr. Hansen was Belanger's treating physician in 2009 and 2010. He opined that her residual functional capacity was limited to lifting and carrying less than ten pounds with no reaching overhead, gross or fine manual manipulation, or postural activities. He opined that she could sit or stand/walk for no more than two hours each per day and that she would need to alternate between sitting, standing, and

walking every fifteen to twenty minutes. He opined that she would need to rest after about fifteen minutes of any activity, including sitting.

The ALJ gave Dr. Hansen's opinion less than controlling weight, but did not specify how much he gave it. He gave two reasons for discounting Dr. Hansen's opinion: (1) it was inconsistent with the record as a whole; and (2) it appeared to be based on Belanger's subjective reporting of pain. With regard to the first reason, the ALJ did not explain which aspects of Dr. Hansen's opinion he found inconsistent with the record. *See Reddick*, 157 F.3d at 725. Such boilerplate criticism, without more, is insufficient to reject a treating physician's opinion under this court's precedent. *See Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014).

As to the second reason, this court and others have recognized that fibromyalgia's "symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia." *Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001) (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)). In the context of a disease that is diagnosed primarily through subjective self-reports, the fact that a treating physician relied on subjective complaints is not itself a valid basis to reject the physician's opinion. *See Reddick*, 157 F.3d at 725-26 (applying

same reasoning in context of chronic fatigue syndrome, the diagnosis of which is also based on subjective self-reports).[1]

**B. Treating Physician Dr. Doak**

Dr. Doak was Belanger's treating primary care physician in 2012. She submitted a questionnaire in which she listed Belanger's diagnoses and assessed her functional limitations. She assessed lift/carry and sit/stand limitations largely consistent with those assessed by Dr. Hansen. She opined that Belanger would be unable to maintain consistent concentration, persistence, and pace for up to a third of each workweek because of her pain. She declined to assess upper extremity or postural limitations, instead recommending a formal functional capacity evaluation.

The ALJ assigned Dr. Doak's opinion little weight. He gave several reasons for discounting it: (1) the opinion was internally contradictory because it gave limitations in some areas but not others; (2) the questionnaire instructed Dr. Doak to disregard it if she did not support the claimant's disability claim; and (3) Dr.

---

[1] We note that "[a]n ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Burrell v. Colvin*, 775 F.3d 1133, 1140-41 (9th Cir. 2014) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)). It is unclear from the ALJ's reasoning whether the ALJ was relying on an adverse credibility determination in evaluating Dr. Hansen's opinion.

Doak stated that Belanger is credible but she did not address the credibility concerns that the ALJ identified elsewhere in his opinion.

With regard to the internal consistency of Dr. Doak's questionnaire, it would be counterproductive to discard a physician's opinion because she declines to evaluate the capacities of a patient with which she is not familiar. It is plausible that Dr. Doak observed Belanger sit, stand, walk, and lift items such as a purse during her appointments, which would give Dr. Doak a basis for evaluating these areas. It is just as plausible that Dr. Doak did not observe Belanger crawling, crouching, or doing fine finger manipulations during her appointments and thus declined to evaluate those capacities. That Dr. Doak only evaluated some of Belanger's capabilities is not a legitimate reason to discard her entire opinion.

The ALJ also found that Dr. Doak's opinion was contradictory because she said that Belanger "has no problem with simple tasks," but also said that Belanger would be unable to work because of her physical impairments. But Dr. Doak said that Belanger would not have a problem "understand[ing], remember[ing] and follow[ing] simple instructions" but that she would have a problem performing the tasks because of her pain and physical limitations. This opinion is not contradictory.

Next, although the ALJ does not explain the relevance to Dr. Doak's medical opinion, we can infer that he thought the attorney's instructions to

5

disregard the questionnaire if she did not support Belanger's claim indicated that Dr. Doak may not be objective. "The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." *Lester*, 81 F.3d at 832. That an attorney requested an evaluation can be relevant "where there is no objective medical basis for the opinion" or "where there is evidence of 'actual improprieties' on the part of the doctor." *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996) (quoting *Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir 1996) (per curiam)). But this court has said that the Commissioner "may not assume that doctors routinely lie in order to help their patients collect disability benefits." *Lester*, 81 F.3d at 832 (quoting *Ratto v. Sec'y, Dep't of Health & Human Servs.*, 839 F. Supp. 1415, 1426 (D. Or. 1993)).

Here, if the medical record showed that Dr. Doak received the questionnaire and declined to fill it out altogether, the ALJ might properly infer that she did not believe that Belanger was disabled. But she did fill out parts of the form, and she answered the questions in the questionnaire that asked for an explanation of her functional capacity ratings. In the absence of evidence of actual impropriety, the fact that the attorney wrote on the questionnaire that the doctor should disregard it if she was not supportive of Belanger's benefits applications is not a legitimate reason to discount the medical opinion.

6

Finally, that Dr. Doak believed Belanger to be credible is not a legitimate reason to discount her medical opinion. To be sure, the ALJ need not adopt Dr. Doak's credibility finding. But the fact that Dr. Doak generally found Belanger credible and relied on her reported symptoms in filling out the questionnaire is not a legitimate reason to discount the opinion.

**C. Examining Physician Dr. Kemple**

A vocational counselor referred Belanger to Dr. Kemple as part of her evaluation by the state's Office of Vocational Rehabilitation Services. Dr. Kemple, a rheumatologist, examined Belanger once in 2005. He concluded, based in part on reviewing x-ray reports, that Belanger had "relatively chronic and progressive degenerative problems involving her neck, low back, knees, and feet," as well as "some neuropathic pain related to thoracic outlet syndrome on the right."

The ALJ gave Dr. Kemple's opinion little weight in part because his opinion was not consistent with the objective evidence. This is a legitimate reason supported by substantial evidence, and as a result the ALJ did not err in affording the opinion little weight. Belanger argues that the ALJ erred because "fibromyalgia doesn't show on x-rays or MRI scans." This is a correct statement about fibromyalgia. *See Rollins*, 261 F.3d at 855. But here, it misses the mark because Dr. Kemple attributed Belanger's limited range of motion to chronic and progressive degenerative problems, which would be evident on x-rays or MRIs.

And as the ALJ correctly noted, all of Belanger's objective imaging tests showed mild degenerative changes at most. The ALJ properly discounted Dr. Kemple's opinion.

## II.

Belanger also argues that the ALJ erred in ignoring the objective test results of vocational expert David Hitt. In *Dale v. Colvin*, we held that "an ALJ errs when he discounts an other source's *entire* testimony because of inconsistency with the evidence in the record, when the ALJ has divided the testimony into distinct parts and determined that only one part of the testimony is inconsistent." 823 F.3d 941, 945 (9th Cir. 2016).

In this case Hitt discussed objective test results, testing things such as hand-eye coordination, and also made medical conclusions despite not having any medical training. The ALJ properly disregarded the medical conclusions, given Hitt's lack of expertise. The only reason the ALJ gave for rejecting the test results, however, was that Hitt "appears to be acting as the claimant's advocate instead of someone who evaluates her job skills." Yet, the sole evidence the ALJ gives for this conclusion is the fact Hitt mentioned that Belanger bore a "heavy load" by being unable to work, but still having to take care of special needs children. This is too thin of a reed to discredit all the test results because of alleged bias. The ALJ also said that Hitt's failure to explain how the claimant managed to raise

8

children despite poor hand-eye coordination undercuts his testimony, but without elaboration this conclusory statement is also not enough.

## III.

The hypothetical posed to the vocational expert at steps four and five must include all of a claimant's limitations. *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988). Belanger does not assert a separate error related to the vocational expert testimony; instead, she argues that the ALJ's hypothetical was incomplete in part because it did not include restrictions assessed by Drs. Hansen and Doak and supported by Hitt's objective test results. We agree.

Here, the vocational expert testified that Belanger would not be able to return to her past work if she: (1) was restricted to simple, repetitive, routine work; (2) required a break after every fifteen minutes of work; (3) missed two or more days of work per month; or (4) could perform tasks involving fine motor dexterity for no more than fifteen minutes at a time before requiring a break. We cannot conclude that the errors in weighing the treating physicians' opinions and in disregarding Hitt's objective test results were harmless, because the vocational expert's testimony suggests that adopting even some of the relevant limitations would lead to a different result.

We reject Belanger's other arguments on the merits.

## IV.

9

We REVERSE and REMAND for further proceedings.

*Belanger v. Berryhill*, No. 14-35632

O'SCANNLAIN, Circuit Judge, concurring in part and in the judgment:

While I concur in the judgment, I join only Part II of the court's disposition. The majority makes two errors on its way to reversing the ALJ. Specifically, it does not properly credit the ALJ's adverse credibility determination against Belanger and how this determination would logically undercut the credibility of Belanger's subjective reporting of pain to Dr. Hansen. Nor does it give proper deference to the ALJ's factual conclusions. *See, e.g.*, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1985) ("If the evidence admits of more than one rational interpretation, we must uphold the decision of the ALJ."). Instead, the majority conducts a de facto de novo review of the ALJ's reasoning.

I

The majority argues that the ALJ erred in discounting Dr. Hansen's opinion because "the fact that a treating physician relied on subjective complaints is not itself a valid basis to reject the physicians's opinion." Mem Dispo. at 3. This is absolutely true, but also completely irrelevant. The reason Dr. Hansen's opinion was discounted is because Belanger's subjective complaints were discredited.

The ALJ made clear that "the claimant's allegations have limited credibility" and that "claimant's allegations of disabling pain and other symptoms are not credible" because of her unreliable self-reporting. The majority concedes that "[a]n

ALJ may reject a treating physician's opinions if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." Mem Dispo at 4, n.1 (citing *Burrell v. Colvin*, 775 F.3d 1133, 1140–41 (9th Cir. 2014)). That would seem to end the inquiry—Belanger's testimony was discredited, she did not challenge this adverse credibility determination before us or the district court, and therefore her self-reports have been properly discounted.

The majority sidesteps this problem by saying the ALJ was "unclear" as to whether he "was relying on an adverse credibility determination in evaluating Dr. Hansen's opinion." Mem Dispo at 4, n.1. But the inference is obvious. The ALJ discredited Belanger's self-reporting about her testimony. He then discredited Dr. Hansen's opinion because it relied on this testimony. To reverse because the ALJ said "Dr. Hanson['s] . . . opinion is not given controlling weight because it . . . appears to be based on claimants subjective reporting of pain" rather than "based on claimants *discredited* subjective reporting of pain" is absurdly hyper-technical. The opinion clearly states that her subjective reporting of pain has been discredited. To not assume this inference is a "rational interpretation" of the ALJ's position reads our duty to be deferential out of existence. *Allen*, 749 F.2d at 579.

And even if the ALJ did err, the error is harmless. Belanger waived any challenge to the adverse credibility determination. The ALJ made clear this

2

determination extended to subjective reports about pain. This error ultimately has no effect on the decision to discredit Dr. Hansen, since upon remand the ALJ should just insert the word "discredited" before "subjective" and cite *Burrell*, 775 F.3d at 1140–41. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (discussing the harmless error doctrine).

## II

Dr. Doak is a closer case, but I think that given the record, and our duty to defer to the ALJ, the ALJ's decision to discount her testimony is a rational interpretation of the record. The indication of bias, Dr. Doak's incorrect assertion that the claimant is credible, along with the general observation that Belanger's self-reporting is not credible, provides enough support for the ALJ's position that he should not be overturned, even if other rational interpretations of the evidence exist.

## III

I agree with the majority that Belanger's other arguments should be rejected on the merits.