MEMORANDUM **
Michele Belanger appeals the district court’s order affirming the denial of her application for Social Security disability benefits. Her application was denied initially and on reconsideration. Following remands from the Appeals Council and district court, an administrative law judge (ALJ) found Belanger not disabled and the district court affirmed. We reverse and remand for further proceedings.
I.
Belanger contends that the ALJ erred by giving only some weight to the opinions of treating physicians Drs. Hansen and Doak and examining physician Dr. Kemple. When faced with contradictory opinions, the ALJ must give specific and legitimate reasons supported by substantial evidence in the record to reject a treating physician’s opinion. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). “The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctor’s], are correct.” Id. Similarly, an ALJ must give specific and legitimate reasons that are supported by substantial evidence to reject the contradicted opinion of an examining physician. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).
A. Treating Physician Dr. Hansen
Dr. Hansen was Belanger’s treating physician in 2009 and 2010. He opined that her residual functional capacity was limited to lifting and carrying less than ten pounds with no reaching overhead, gross or fine manual manipulation, or postural activities. He opined that she could sit or stand/walk for no more than two hours each per day and that she would need to alternate between sitting, standing, and walking every fifteen to twenty minutes. He opined that she would need to rest after about fifteen minutes of any activity, including sitting.
The ALJ gave Dr. Hansen’s opinion less than controlling weight, but did not specify how much he gave it. He gave two reasons for discounting Dr. Hansen’s opinion: (1) it was inconsistent with the record as a whole; and (2) it appeared to be based on Belanger’s subjective reporting of pain. With regard to the first reason, the ALJ did not explain which aspects of Dr. Hansen’s opinion he found inconsistent with the record. See Reddick, 157 F.3d at 725. Such boilerplate criticism, without more, is insufficient to reject a treating physician’s opinion under this court’s precedent. See Garrison v. Colvin, 759 F.3d 995, 1012-13 (9th Cir. 2014).
As to the second reason, this court and others have recognized that fibromyalgia’s “symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia.” Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001) (quoting Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996)). In the context of a disease that is diagnosed primarily through subjective self-reports, the fact that a treating physician relied on subjective complaints is not itself a valid basis to reject the physician’s opinion. See Reddick, 157 F.3d at 725-26 (applying same reasoning in context of chronic fatigue syndrome, *599 the diagnosis of which is also based on subjective self-reports).[1]
B. Treating Physician Dr. Doak
Dr. Doak was Belanger’s treating primary care physician in 2012. She submitted a questionnaire in which she listed Belanger’s diagnoses and assessed her functional limitations. She assessed lift/carry and sit/stand limitations largely consistent with those assessed by Dr. Hansen. She opined that Belanger would be unable to maintain consistent concentration, persistence, and pace for up to a third of each workweek because of her pain. She declined to assess upper extremity or postural limitations, instead recommending a formal functional capacity evaluation.
The ALJ assigned Dr. Doak’s opinion little weight. He gave several reasons for discounting it: (1) the opinion was internally contradictory because it gave limitations in some areas but not others; (2) the questionnaire instructed Dr. Doak to disregard it if she did not support the claimant’s disability claim; and (3) Dr. Doak stated that Belanger is credible but she did not address the credibility concerns that the ALJ identified elsewhere in his opinion.
With regard to the internal consistency of Dr. Doak’s questionnaire, it would be counterproductive to discard a physician’s opinion because she declines to evaluate the capacities of a patient with which she is not familiar. It is plausible that Dr. Doak observed Belanger sit, stand, walk, and lift items such as a purse during her appointments, which would give Dr. Doak a basis for evaluating these areas. It is just as plausible that Dr. Doak did not observe Belanger crawling, crouching, or doing fine finger manipulations during her appointments and thus declined to evaluate those capacities. That Dr. Doak only evaluated some of Belanger’s capabilities is not a legitimate reason to discard her entire opinion.
The ALJ also found that Dr. Doak’s opinion was contradictory because she said that Belanger “has no problem with simple tasks,” but also said that Be-langer would be unable to work because of her physical impairments. But Dr. Doak said that Belanger would not have a problem “understanding], remembering] and following] simple instructions” but that she would have a problem performing the tasks because of her pain and physical limitations. This opinion is not contradictory.
Next, although the ALJ does not explain the relevance to Dr. Doak’s medical opinion, we can infer that he thought the attorney’s instructions to disregard the questionnaire if she did not support Belanger’s claim indicated that Dr. Doak may not be objective. “The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them.” Lester, 81 F.3d at 832. That an attorney requested an evaluation can be relevant “where there is no objective medical basis for the opinion” or “where there is evidence of ‘actual improprieties’ on the part of the doctor.” Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996) (quoting Saelee v. Chater, 94 F.3d 520, 523 (9th Cir. 1996) (per curiam)). But this court has said that the Commissioner “may not assume that doctors routinely lie in order to help their *600 patients collect disability benefits.” Lester, 81 F.3d at 832 (quoting Ratto v. Sec’y, Dep’t of Health & Human Servs., 839 F.Supp. 1415, 1426 (D. Or. 1993)).
Here, if the medical record showed that Dr. Doak received the questionnaire and declined to fill it out altogether, the ALJ might properly infer that she did not believe that Belanger was disabled. But she did fill out parts of the form, and she answered the questions in the questionnaire that asked for an explanation of her functional capacity ratings. In the absence of evidence of actual impropriety, the fact that the attorney wrote on the questionnaire that the doctor should disregard it if she was not supportive of Belanger’s benefits- applications is not a legitimate reason to discount the medical opinion.
Finally, that Dr. Doak believed Be-langer to be credible is not a legitimate reason to discount her medical opinion. To be sure, the ALJ need not adopt Dr. Doak’s credibility finding. But the fact that Dr. Doak generally found Belanger credible and relied on her reported symptoms in filling out the questionnaire is not a legitimate reason to discount the opinion.
C. Examining Physician Dr. Kemple
A vocational counselor referred Be-langer to Dr. Kemple as part of her evaluation by the state’s Office of Vocational Rehabilitation Services. Dr. Kemple, a rheumatologist, examined Belanger once in 2005. He concluded, based in part on reviewing x-ray reports, that Belanger had “relatively chronic and progressive degenerative problems involving her neck, low back, knees, and feet,” as well as “some neuropathic pain related to thoracic outlet syndrome on the right.”
The ALJ gave Dr. -Kemple’s opinion little weight in part because his opinion was not consistent with the objective evidence. This is a legitimate reason supported by substantial evidence, and as a result the ALJ did not err in affording the opinion little weight. Belanger argues that the ALJ erred because “fibromyalgia doesn’t show on x-rays or MRI scans.” This is a correct statement about fibromyalgia. See Rollins, 261 F.3d at 855. But here, it misses the mark because Dr. Kemple attributed Belanger’s limited range of motion to chronic and progressive degenerative problems, which would be evident on x-rays or' MRIs. And as the ALJ correctly noted, all of Belanger’s objective imaging tests showed mild degenerative changes at most. The ALJ properly discounted Dr. Kemple’s opinion.
II.
Belanger also argues that the ALJ erred in ignoring the objective test results of vocational expert David Httt. In Dale v. Colvin, we held that “an ALJ errs when he discounts an other source’s entire testimony because of inconsistency with the evidence in the record, when the ALJ has divided the testimony into distinct parts and determined that only one part of the testimony is inconsistent.” 823 F.3d 941, 945 (9th Cir. 2016).
In this case Hitt discussed objective test results, testing things such as hand-eye coordination, and also made medical conclusions despite not having any medical training. The ALJ pi’operly disregarded the medical conclusions, given Hitt’s lack of expertise. The only reason the ALJ gave for rejecting the test results, however, was that Hitt “appears to be acting as the claimant’s advocate instead of someone who evaluates her job skills.” Yet, the sole evidence the ALJ gives for this conclusion is the fact Hitt mentioned that Belanger bore a “heavy load” by being unable to work, but still having to take care of special needs children. This is too thin of a *601 reed to discredit all the test results because of alleged bias. The ALJ also said that Hitt’s failure to explain how the claimant managed to raise children despite poor hand-eye coordination undercuts his testimony, but without elaboration this conclu-sory statement is also not enough.
III.
The hypothetical posed to the vocational expert at steps four and five must include all of a claimant’s limitations. Embrey v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988). Belanger does not assert a separate error related to the vocational expert testimony; instead, she argues that the ALJ’s hypothetical was incomplete in part because it did not include restrictions assessed by Drs. Hansen and Doak and supported by Hitt’s objective test results. We agree.
Here, the vocational expert testified that Belanger would not be able to return to her past work if she: (1) was restricted to simple, repetitive, routine work; (2) required a break after every fifteen minutes of work; (3) missed two or more days of work per month; or (4) could perform tasks involving fine motor dexterity for no more than fifteen minutes at a time before requiring a break. We cannot conclude that the errors in weighing the treating physicians’ opinions and in disregarding Hitt’s objective test results were harmless, because the vocational expert’s testimony suggests that adopting even some of the relevant limitations would lead to a different result.
We reject Belanger’s other arguments on the merits.
IV.
We REVERSE and REMAND for further proceedings.

 This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

. We note that ‘‘[a]n ALJ may reject a treating physician’s opinion if it is based to a large extent on a claimant’s self-reports that have been properly discounted as incredible.” Burrell v. Colvin, 775 F.3d 1133, 1140-41 (9th Cir. 2014) (quoting Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008)). It is unclear' from the ALJ’s reasoning whether the ALJ was relying on an adverse credibility determination in evaluating Dr. Hansen’s opinion.