RAWLINSON, Circuit Judge, dissenting: I respectfully dissent from my colleagues’ conclusions that the Administrative Law Judge (ALJ) “erred in its assessment (1) by not calling a medical advisor at the hearing; (2) by giving too little weight to the observations of [Plaintiff-Appellant Brenda MJ Diedrich’s fiancé; and (3) by finding that Diedrich was only partially credible.” Majority Opinion, p. 636. It is unquestioned and unquestionable that the claimant suffered from significant physical and mental impairments. The issue raised in the proceedings was whether those impairments rendered the claimant disabled under the Social Security Act. The ALJ ruled that they did not. Our task is to examine whether the ALJ’s determination is supported by substantial evidence, not whether we disagree with the ALJ’s determination. See Attmore v. Colvin, 827 F.3d 872, 875 (9th Cir. 2016). 1. Failure To Call A Medical Advisor The majority concludes that the ALJ committed legal error by failing to call a medical advisor to assist in determining the disability onset date. See Majority Opinion, p. 639. The majority acknowledges that we have consistently ruled that a medical advisor is required only if there is ambiguity in the record and the onset date must be inferred. See id., p. 638; see also Armstrong v. Comm’r, 160 F.3d 587, 589 (9th Cir. 1998). However, the majority opinion points to no real ambiguity in the record regarding the onset date of the claimant’s disability. Indeed, the ALJ, without objection, accepted the alleged onset date of October 1, 2002, when evaluating the evidence offered to support a finding of disability. The majority seeks to manufacture an ambiguity by selectively referring to portions of the record. See Majority Opinion, p. 639. But the fact remains that the parties did not dispute the onset date alleged by Diedrich and accepted by the ALJ. There is absolutely no ambiguity in this record regarding the asserted onset date. More importantly, we have ruled that no medical advisor is required if the ALJ determines that the claimant was never disabled. See Sam v. Astrue, 550 F.3d 808, 809 (9th Cir. 2008). This ruling makes perfect sense because if there was never a disability, the onset date no longer has relevance. In concluding that this precedent does not apply, the majority inexplicably ignores at least four explicit findings of non-disability made by the ALJ. On page 1 of her decision, the ALJ stated: After careful consideration of all the evidence, the undersigned concludes the claimant was not under a disability within the meaning of the Social Security Act ... On page 12 of the decision, the ALJ determined: A finding of “not disabled” is therefore appropriate under the framework of the above cited rule. [[Image here]] The claimant was not under a disability, as defined in the Social Security Act, at any time from October 1, 2002, the alleged onset date, through June 30, 2008, the date last insured ... In her conclusion on page 13 of the decision, the ALJ reiterated: Based on the application for a period of disability and disability insurance benefits ..., the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act ... In view of the ALJ’s repeated findings of no disability, it cannot credibly be gainsaid that the ALJ found the claimant was not disabled. That finding placed this case within our holding in Sam that no medical advisor was required. No legal error occurred. See Sam, 550 F.3d at 810 (“Because the ALJ found that Sam was not disabled at any time through the date of the decision, the question of when he became disabled did not arise and the procedures prescribed in SSR 83-20 did not apply.”) (citation omitted) (emphases in Sam). In Sam, we clarified that “SSR 83-20 addresses the situation in which an administrative law judge makes a finding that an individual is disabled as of an application date and the question arises as to whether the disparity arose at an earlier time.” Id. (citation omitted). We distinguished our earlier decisions in Armstrong and Morgan v. Sullivan, 945 F.2d 1079 (9th Cir. 1991), as applying when “there was either an explicit ALJ finding or substantial evidence that the claimant was disabled at some point after the date last insured, thus raising a question of onset date.” Sam, 550 F.3d at 811 (emphasis added). In contrast, the ALJ in Sam, like the ALJ in the case before us, “found that [the claimant] was not disabled at any time.” Id. In light of that finding, “the ALJ was not required by SSR 83-20 to introduce a medical expert into the process.” Id. 2. Giving Too Little Weight To The Testimony Of Claimant’s Fiancé This issue may be resolved by reviewing the claimant’s testimony because we have ruled that where the ALJ provides germane reasons for giving less weight to subjective testimony from one witness, similar testimony by a different witness may also be given less weight. See Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (“[BJeeause the ALJ provided clear and convincing reasons for rejecting the claimant’s own subjective complaints, and because the lay witness’s testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting the lay witness’s testimony.”) (quoting Valentine v. Comm’r, 574 F.3d 685, 694 (9th Cir. 2009) (internal quotation marks omitted)). As discussed below, the ALJ gave “clear and convincing” reasons for only partially crediting the claimant’s testimony. Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014) (setting standard). As a result, the testimony of claimant’s fiancé fares no better. See Molina, 674 F.3d at 1114. 3. Partially Crediting Claimant’s Testimony The ALJ provided the following reasons for only partially crediting the claimant’s testimony: (1) Although the claimant testified that she suffered from “severe mania, depression, anxiety, and agoraphobia,” the “orthopedic consultative examiner ... did not make any observations about the claimant being anxious, flighty, depressed, or manic.” In addition, mental health treatment notes support a conclusion that the claimant was capable of functioning.” A mental health examination reflected “no indications] of hallucinations, delusions, obsessions, phobias, or perceptual disturbances.” Indeed, the claimant herself “described her mood as ‘good’ and her social judgment, intellectual functioning, and memory were all normal.” Despite the claimant’s testimony regarding multiple personalities and disassociative disorder,” there were no reported observations of multiple personalities in the record. (2) The claimant engaged in a wide range of daily living activities that were inconsistent with her asserted disability. The claimant lived alone with her cat, dressed herself, bathed herself, enjoyed cooking, fed her cat, cleaned the cat’s litter box, cleaned her home, washed dishes, vacuumed and cleaned her bathrooms. She sometimes walked and sometimes traveled by car to various destinations. She shopped for groceries and clothes, and was able to pay bills, count change, and use a checkbook. She also managed a savings account. We have consistently held that similar findings constituted substantial evidence to support a partial credibility determination made by an ALJ. See, e.g., Lewis v. Apfel, 236 F.3d 603, 611 (9th Cir. 2001) (“One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.”) (citation omitted); see also id. at 612 (“The absence of any mention of fatigue, along with the ‘no side effects’ observations in [claimant’s] medical reports, supported the ALJ’s rejection of ... testimony that [claimant] had suffered chronic fatigue ... ”). The majority takes issue with the partial credibility finding of the ALJ, specifically challenging the bona fides of the reasons articulated by the ALJ to support her finding. In addressing the ALJ’s reliance on the lack of any reference to the claimant being “anxious, flighty, depressed or manic,” in Dr, Robinson’s report, the majority observes that Dr. Robinson was an orthopedist rather than a mental health professional. Majority Opinion, p. 641. However, an orthopedic physician is an acceptable medical source upon whose observations the ALJ properly relied. See 20 C.F.R. § 416.902(a) (defining “acceptable medical source”). The listing of complaints referenced by the majority, see Majority Opinion, p. 641, merely represented claimant’s summary of her condition rather than observations of the physician. See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (permitting an ALJ to “reject a treating physician’s opinion if it is based to a large extent on a claimant’s self-reports”) (citation and internal quotation marks omitted). The majority also refers to the claimant’s visit to a psychologist, Dr. Dietlein. See Majority Opinion, p. 641. Nevertheless, the bottom line of Dr. Dietlein’s opinion does not support a claim of mental disability. In Dr. .Dietlein’s Summary of Findings, he concluded: “Today’s evaluation revealed that Ms. Diedrich is able to understand and remember instructions, is, able to sustain her concentration and attention and is able to persist. She was able to engage in social interactions successfully. I believe she would be able to adequately manage any funds that might be given to her.” Addressing the lack of mental health symptoms observed by therapist Buttar, the majority offers the following equivocation: [T]he fact that Diedrich was not exhibiting certain symptoms at the time of her appointment on a particular day does not indicate that Diedrich was not experiencing those, symptoms generally or at other pertinent times. Majority Opinion, p. 642. The majority also isolates' therapist But-tar’s observations to argue the absence of a “broader development” of mental health issues. Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1017-18 (9th Cir. 2014)). The flaw in- the majority’s argument .is that Buttar’s observations were buttressed by the similar observations of Drs. Robinson and Dietlin, reflecting a “broader development” of the absence of a disabling mental disability. Garrison, 759 F.3d at 1017. More fundamentally, the majority’s reliance on Garrison is singularly misplaced because the facts in Garrison are almost the polar opposite of the facts in this record. In Garrison, the “diagnoses of [post-traumatic stress disorder] and bipolar disorder remained constant across all treatment records.” Id. In this case, in contrast, the absence of any observed disabling mental impairment “remained constant across all treatment records.” Id. (emphasis added). At best, the majority’s view is an alternative interpretation of the evidence presented at the hearing. However, we have repeatedly held that if there are two permissible views of the evidence, the view taken by the ALJ must stand. See Burch v. Barnhart, 400 F.3d 676, 679 (“Where evidence is susceptible to more than one rational interpretation, it is the ALJ’s conclusion that must be upheld; ,..”) (citation omitted) (emphasis added); see also Garrison, 759 F.3d at 1010 (“Where the evidence can reasonably support either affirming or reversing a decision, we may not substitute , our judgment for that of the ALJ,...”) (citation and alteration omitted); Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (same).. The majority also takes issue with the ALJ’s discounting of the “split personality” disorder evidence. Majority Opinion, p. 642. As an initial matter, the reference to a previous diagnosis of split personality was based entirely on the claimant’s own reporting, and may be discounted on that basis. See Ryan v. Comm’r of Soc. Sec., 528 F.3d 1194, 1206-07 (9th Cir. 2008) (holding that “an ALJ. may discount a medical opinion that relies on subjective statements rather than clinical findings”). In addition, reliance on the observations of claimant’s fiancé to support the diagnosis of “split personality” is problematic for two reasons: 1) the observations were made after the date last insured and 2) the observations were not consistent with the medical evidence of record. See Dale v. Colvin, 823 F.3d 941, 944 (9th Cir. 2016) (describing after-the-fact observations of the claimant’s impairments as “marginally relevant,” especially where the evidence differed from the opinion of the doctors); see also Batson v. Comm’r, 359 F.3d 1190, 1196 (9th Cir. 2004) (approving ALJ'dis-crediting of claimant’s testimony that was inconsistent with the medical evidence); Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (approving ALJ, discrediting of family member testimony that was inconsistent with the medical evidence); Vincent on behalf of Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (same). In sum,- the .ALJ’s discounting of the fiance’s testimony was supported by substantial evidence. We have regularly’ defined substantial evidence as “more than a scintilla [but] less than a preponderance.” Holohan, 246 F.3d at 1201, quoting Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). We have emphasized that the substantial, evidence standard is “very deferential ... even more so than the ‘clearly erroneous’ standard.” Brault v. Social Sec. Admin., 683 F.3d 443, 448 (2nd Cir. 2012) (citation omitted). We have clarified that “[t]he substantial evidence standard means once an ALJ finds facts, we. can reject those facts only if a reasonable factfinder would have to conclude othenvise.” Id., (citations and internal quotation marks omitted) (emphasis in the original). Unfortunately, the majority failed to adhere to this standard throughout the majority opinion, but most especially when reviewing the ALJ’s determination that the claimant’s daily activities were inconsistent with the asserted level of impairment. The ALJ noted that the claimant lived alone with her cat, cared for her cat, bathed and dressed herself, enjoyed cooking, and cleaned her home. She shopped for groceries and clothing, paid bills, counted change, used a checkbook, and managed a savings account. We have recognized and affirmed findings of an ALJ that similar “daily activities [of a claimant] are inconsistent with [her] allegations of disability.” Carmickle v. Comm’r, 533 F.3d 1155, 1163 (9th Cir. 2008). More precisely, we have upheld similar credibility findings in cases involving facts virtually identical to those in this case. See Batson, 359 F.3d at 1196 (upholding a partial credibility determination where the claimant “tend[ed] his animals, walk[ed] outdoors, [went] out for coffee, and visit[ed] with neighbors”); see also Morgan v. Comm’r, 169 F.3d 595, 600 (9th Cir. 1999) (affirming that the ALJ “provided specific and substantial reasons that undermine [claimant’s] credibility,” including the claimant’s “ability to fix meals, do laundry, work in the yard, and occasionally care for his friend’s child”). In Burch, 400 F.3d at 680-81, the ALJ noted that the claimant was “able to care for her own personal needs, cook, clean and shop. She interacted] with her nephew and her boyfriend. She [was] able to manage her own finances and those of her nephew.” In upholding the ALJ’s partial rejection of the claimant’s testimony, we emphasized: Although the evidence of [the claimant’s] daily activities may also admit of an interpretation more favorable to [the claimant], the ALJ’s interpretation was rational, and we must uphold the ALJ’s decision where the evidence is susceptible to more than one rational interpretation. Id. (alteration omitted). After applying the deferential substantial evidence standard of review, I agree with the magistrate judge and the district court that the decision of the ALJ was free of legal error and supported by substantial evidence. In my view, the majority reaches a different result by reweighing the evidence, something we are not permitted to do. See Brault, 683 F.3d at 447 (“[I]t is not our function to determine de novo whether a [claimant] is disabled. ... ”) (citation and alteration omitted). I respectfully dissent.