NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

APR 17 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| KATHY S. MILLER,<br><br>        Plaintiff - Appellant,<br><br>  v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>        Defendant - Appellee. | No. 25-1150<br><br>D.C. No.<br>3:24-cv-05260-GJL<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Western District of Washington
Grady J. Leupold, Magistrate Judge, Presiding

Submitted April 16, 2026[**]
Portland, Oregon

Before: OWENS, VANDYKE, and SUNG, Circuit Judges.

Kathy Sue Miller appeals from the district court's order affirming an

Administrative Law Judge's ("ALJ") denial of her application for

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

disability-insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–433. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

We review a denial of Social Security benefits de novo. *Revels v. Berryhill*, 874 F.3d 648, 653–54 (9th Cir. 2017). We set aside a denial of benefits only when the decision is "based on legal error or not supported by substantial evidence in the record." *Id.* at 654. "'Substantial evidence' means more than a mere scintilla, but less than a preponderance." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "[T]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020) (quotation marks omitted). And "[i]f the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* at 1154 (quotation marks omitted).

1. The ALJ did not err in rejecting the opinion of Dr. Penny Faires. Miller filed her claim in 2015, so the rules in 20 C.F.R. § 404.1527 govern whether the ALJ properly evaluated the medical-opinion evidence. Those rules require the ALJ to determine the appropriate weight to give an opinion based on a number of factors, including the length and nature of the treatment relationship, the supportability of the opinion, the consistency of the opinion with other evidence in the record, and the specialization of the physician. 20 C.F.R. § 404.1527(c)(2)–(6). Here, Dr. Faires's conclusory statement failed to describe or explain any limitations that Miller had at

2                                                                         25-1150

the relevant time. *See Ford*, 950 F.3d at 1154 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). Moreover, Dr. Faires's conclusory statement that Miller had "serious PTSD and mental health issues that prevent[ed] her from … being able to work" was given and related to the time period two years after her insured status expired. *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998); 20 C.F.R. § 404.1527(d)(1).

Nor did the ALJ err by discounting Ms. Kara Wade's statements. The parties agree that Ms. Wade is not an "acceptable medical source" under the regulations. *See* 20 C.F.R. § 404.1527 (2017); 20 C.F.R. §§ 404.1513(a), 404.1513(d) (2013). Thus, to discount Ms. Wade's statements, the ALJ needed to provide only "reasons germane" to Ms. Wade for discounting them. *Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016). Here, as the ALJ explained, Ms. Wade "did not begin to treat [Miller] until over a year after her date last insured." *See Tidwell*, 161 F.3d at 602; *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989). Additionally, as the ALJ explained, Ms. Wade's statements were undermined by medical evidence from the relevant period, which showed that Miller generally had a "pleasant affect" and "normal" mood, attention span, and concentration.

25-1150

2. The ALJ did not err in discounting Miller's testimony. "When objective medical evidence is inconsistent with a claimant's subjective testimony, an ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (quotation marks omitted). "The standard … is … whether the ALJ's rationale is clear enough that it has the power to convince." *Id.* at 499. Here, as the ALJ explained, at some points during the insured-status period, Miller denied having depression, anxiety, and fatigue at all, which is inconsistent with her testimony that her mental-health issues were consistently so severe as to render her unable to work. And physician treatment notes showed that, during the relevant period, Miller had "normal" mood, affect, attention span, and concentration, and that her depression was "well controlled." Moreover, "[t]he medical record from the period at issue does not contain evidence of panic attacks." *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

Evidence of past treatment and medication provides further substantial evidence to support the ALJ's discounting of Miller's testimony. The regulations require the ALJ to consider medication and treatment as factors relevant to a claimant's symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(iv)–(v). The ALJ noted that Miller's anxiety was, as of March 2014, "stable" when she was taking Citalopram. Shortly after that, though, Miller stopped taking her medication, "did great for the

4

first 4 months" off medication, but then "[felt] more depressed and almost on the verge of tears all the time." When she restarted a smaller dose of medication, within a "week or so," her mood and affect were normal.

The ALJ's consideration of Miller's activities provides further support for his weighing of Miller's testimony. "An ALJ may … consider whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Smartt*, 53 F.4th at 499 (quotation marks omitted). Here, the ALJ pointed to Miller's self-reported account that, despite having some issues in her relationships, Miller "rent[ed] rooms in her house to people," entertained visitors at her house, attended AA meetings, and carpooled. *See Ahearn v. Saul*, 988 F.3d 1111, 1116–17 (9th Cir. 2021).

3. The ALJ properly evaluated the lay evidence. "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). "One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." *Id.*. Here, as the ALJ explained, the medical evidence showed that Miller, at various points during the relevant period, was "doing well regarding anxiety and depression." This evidence contradicts the lay witnesses' testimony. *See id.*

4.     Miller's challenges to the ALJ's residual-functional-capacity determination and step-five findings hinge on the success of her arguments about the ALJ's weighing of the evidence. Because those arguments fail, we reject Miller's challenge to the residual-functional-capacity determination and step-five findings. *See Kitchen v. Kijakazi*, 82 F.4th 732, 742 (9th Cir. 2023).

**AFFIRMED.**